```
 1

 2                 UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF NEW YORK
 3     - - - - - - - - - - - - - - - - - - - - - - - - - -
       ANTHONY MILLER,
 4             Plaintiff,
                                 22-CV-6069 (FPG)(MJP)
 5     v.

 6     THE CITY OF ROCHESTER, MARYROSE M. WENGERT AND
       EARL G. WENGERT, AS CO-EXECUTORS OF THE ESTATE OF
 7     NOLAN WENGERT (deceased), DARYL HOGG, JASON
       PRINZI, DANIEL WATSON, and "JOHN DOE" RPD
 8     OFFICERS 1-10,
               Defendants.
 9     - - - - - - - - - - - - - - - - - - - - - - - - - -
                       THE STATE OF NEW YORK
10                       COURT OF CLAIMS
       - - - - - - - - - - - - - - - - - - - - - - - - - -
11     ANTHONY MILLER,
               Plaintiff,
12                           Claim No. 135854
       v.
13
       THE STATE OF NEW YORK,
14             Defendant.
       - - - - - - - - - - - - - - - - - - - - - - - - - -
15
       Video-recorded Deposition Upon Oral Examination of:
16
                       Officer Daryl Hogg
17

18     Location:        Alliance Court Reporting, Inc.
                         109 South Union Street, Suite 400
19                       Rochester, New York 14607

20     Date:            March 9, 2023

21

22     Time:            10:00 a.m.

23
       Reported By:     MICHELLE MUNDT ROCHA
24                       Alliance Court Reporting, Inc.
                         109 South Union Street, Suite 400
25                       Rochester, New York 14607
```



```
 1                    A P P E A R A N C E S

 2    Appearing Remotely on Behalf of Plaintiff:

 3    Elliot D. Shields, Esq.
          Roth & Roth LLP
 4        192 Lexington Avenue, Suite 802
          New York, New York  10016
 5        eshields@rothandrothlaw.com

 6
      Appearing on Behalf of Defendants
 7    The City of Rochester, Maryrose M. Wengert and
      Earl G. Wengert, as co-executors of the Estate of
 8    Nolan Wengert (deceased), Daryl Hogg, Jason Prinzi,
      Daniel Watson, and "John Doe" RPD Officers 1-10:

 9
      Patrick B. Naylon, Esq.
10        City of Rochester Law Department
          City Hall, Room 400A
11        30 Church Street
          Rochester, New York  14614-1224
12        patrick.naylon@cityofrochester.gov

13
      Appearing Remotely on Behalf of Defendant
14    The State of New York:

15    Tamara B. Christie, Esq.
          New York State Office of the Attorney General
16        Court Exchange Building
          144 Exchange Boulevard, Suite 200
17        Rochester, New York  14614-2176
          Tamara.Christie@ag.ny.gov

18

19    Appearing as the Videographer:

20    Kenneth Williamson
          Alliance Court Reporting, Inc.
21        109 South Union Street, Suite 400
          Rochester, New York  14607

22

23                    *       *       *

24

25
```



```
 1                   S T I P U L A T I O N S
 2    THURSDAY, MARCH 9, 2023;
 3              (Proceedings in the above-titled matter
 4              commencing at 9:59 a.m.)
 5                        *      *      *
 6              IT IS HEREBY STIPULATED by and between the
 7    attorneys for the respective parties that this
 8    deposition may be taken by the Plaintiff at this time
 9    pursuant to notice;
10              IT IS FURTHER STIPULATED, that all
11    objections except as to the form of the questions and
12    responsiveness of the answers, be reserved until the
13    time of the trial;
14              IT IS FURTHER STIPULATED, that pursuant to
15    Federal Rules of Civil Procedure 30(e)(1) the witness
16    requests to review the transcript and make any
17    corrections to same before any Notary Public;
18              IT IS FURTHER STIPULATED, that if the
19    original deposition has not been duly signed by the
20    witness and returned to the attorney taking the
21    deposition by the time of trial or any hearing in this
22    cause, a certified transcript of the deposition may be
23    used as though it were the original;
24              IT IS FURTHER STIPULATED, that the
25    attorneys for the parties are individually responsible
```



1           P R O C E E D I N G S

2    for their certified transcript charge, including any

3    expedite or other related production charges in

4    accordance with Rochester Rules, and Mr. Shields will

5    be responsible for Ms. Christie's certified transcript

6    charge;

7            AND IT IS FURTHER STIPULATED, that the

8    Notary Public, MICHELLE MUNDT ROCHA, may administer

9    the oath to the witness.

09:57 10                    *     *     *

09:59 11            THE VIDEOGRAPHER:  We are on the record.

09:59 12    The time is 10:59 a.m. on March 9, 2023.  My name is

09:59 13    Ken Williamson for Alliance Court Reporting, located

09:59 14    at 109 South Union Street, Rochester, New York.  Today

10:00 15    we are located at the offices of Alliance Court

10:00 16    Reporting, and this is a hybrid deposition.

10:00 17            We are about to begin the video-recorded

10:00 18    deposition of Officer Daryl L. Hogg in the matters of

10:00 19    Anthony Miller versus the City of Rochester, et al.,

10:00 20    and Anthony Miller versus the State of New York.

10:00 21    Today's matter is being video-recorded on behalf of

10:00 22    the Plaintiff.

10:00 23            Counsel, please state your appearances for

10:00 24    the record, and please again with the noticing

10:00 25    attorney.



```
            1              OFFICER DARYL HOGG - BY MR. SHIELDS
10:00       2              MR. SHIELDS:  Elliot Shields for the
10:00       3    plaintiff, Anthony Miller, Roth and Roth LLP, New
10:00       4    York, New York.
10:00       5              MR. NAYLON:  Patrick Naylon, City of
10:00       6    Rochester Law Department for the Defendants in the
10:00       7    Federal action.
10:00       8              THE VIDEOGRAPHER:  Thank you, Counsel.
10:00       9              MS. CHRISTIE:  Tamara Christie from the
10:00      10    Attorney General's Office on behalf of the State in
10:00      11    the Court of Claims action.
10:01      12              MR. NAYLON:  Thank you, Counsel.  Sorry
10:01      13    about that.
10:01      14              At this time our court reporter, Michelle
10:01      15    Rocha, also of Alliance Court Reporting, will swear in
           16    our witness.
           17    OFFICER DARYL HOGG,
           18         called herein as a witness, first being sworn,
           19         testified as follows:
           20    EXAMINATION BY MR. SHIELDS:
10:01      21    Q.  Good morning, Officer.
10:01      22    A.  Good morning, sir.
10:01      23    Q.  My name is Elliot Shields.  I represent
10:01      24    the Plaintiff and the Claimant, Anthony Miller, who
10:01      25    was convicted and spent six years in jail before his
```



1          OFFICER DARYL HOGG - BY MR. SHIELDS

10:32   2          You can answer.

10:32   3          A.   There's a wide variety of different things

10:32   4     from larcenies to robberies to assaults.

10:32   5          Q.   And going back to September 25, 2013, you

10:32   6     said you started your shift at 2:45 p.m. that day?

10:32   7          A.   I believe so, yes.

10:32   8          Q.   And on that day, prior to your interaction

10:32   9     with Mr. Miller, did you respond to the

10:32  10     Millbank-Bradburn area for any reason?

10:32  11          A.   Yes.

10:32  12          Q.   Why did you respond to the

10:32  13     Millbank-Bradburn area before your interaction with

10:32  14     Mr. Miller on that day?

10:32  15          A.   We had a call for a -- a 911 call for a

10:33  16     robbery, and we were told that there was two male

10:33  17     blacks that went southbound towards that area.

10:33  18          Q.   So backing up, on September 25, 2013,

10:33  19     prior to the incident involving Mr. Miller, earlier in

10:33  20     your shift had you responded to the Millbank-Bradburn

10:33  21     area for any reason?

10:33  22          A.   Oh, I'm sorry.  I misunderstood that.

10:33  23     That, I don't know of.

10:33  24          Q.   Okay.  So I'm just going to put up what is

10:33  25     marked as -- we'll mark as Exhibit 1.  You got a big



|   |   |   |
|---|---|---|
| | 1 | OFFICER DARYL HOGG - BY MR. SHIELDS |
| 10:33 | 2 | television screen in the room with you that you can |
| 10:33 | 3 | observe documents on? |
| 10:33 | 4 | A.  Yes, sir. |
| 10:33 | 5 | (The following exhibit was identified for the |
| 10:33 | 6 | record:  Number EXH 1.) |
| 10:33 | 7 | Q.  Okay.  So I'm going to put up this |
| 10:33 | 8 | document, which is a CAD report.  And let's see. |
| 10:33 | 9 | Do you see that on your screen, Officer |
| 10:34 | 10 | Hogg? |
| 10:34 | 11 | A.  Yes, sir. |
| 10:34 | 12 | Q.  And am I saying your name right? |
| 10:34 | 13 | A.  Hogg, yes. |
| 10:34 | 14 | Q.  And, Officer, do you see on this document |
| 10:34 | 15 | the date here 9/25/2013? |
| 10:34 | 16 | A.  I do. |
| 10:34 | 17 | Q.  And I've highlighted some of these |
| 10:34 | 18 | portions down here.  So this highlighted portion says |
| 10:34 | 19 | "Bradburn Street/Millbank Street"; correct? |
| 10:34 | 20 | A.  Yes, sir. |
| 10:34 | 21 | Q.  And the beat was RP53; is that right? |
| 10:34 | 22 | A.  Yes, sir. |
| 10:34 | 23 | Q.  Was that the beat that you were working at |
| 10:34 | 24 | the time? |
| 10:34 | 25 | A.  Yes, that's the assigned beat I had. |



```
         1              OFFICER DARYL HOGG - BY MR. SHIELDS
10:34    2         Q.  And down here at 1505 on the first page --
10:34    3    and for the record, the first page of this document is
10:34    4    Bates numbered MILLER 000974.
10:34    5              On the first page at 1505, so that would
10:35    6    be 3:05 p.m.; correct?
10:35    7         A.  Correct.
10:35    8         Q.  And it says dispatch and then 5313 and
10:35    9    Jason Prinzi, Officer Prinzi; is that correct?
10:35   10         A.  Yes, sir.
10:35   11              MS. CHRISTIE:  Excuse me, Mr. Shields.
10:35   12    I'm sorry to interrupt.  Is this the same Exhibit 1
10:35   13    from Officer Watson's deposition yesterday or a
10:35   14    different Exhibit 1?
10:35   15              MR. SHIELDS:  Correct.  It's the same
10:35   16    Exhibit 1, but I'm just going to renumber them today.
10:35   17              MS. CHRISTIE:  Understood.  I just want to
10:35   18    make sure it's the same one for when I start gathering
10:35   19    everything.  Thank you.
10:35   20              MR. SHIELDS:  You're welcome.
10:35   21         Q.  So if we go to page 2, Officer Hogg, it
10:35   22    also says at 1505 assist, 5323 Hogg, Daryl.
10:35   23              So that would have been you; is that
10:35   24    right?
10:35   25         A.  Yes, sir.
```



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

```
        1              OFFICER DARYL HOGG - BY MR. SHIELDS
10:35   2         Q.  So can you just review this page and then
10:35   3    tell me when you're done reading it over?
10:35   4         A.  I will.
10:36   5              Okay.  I believe I've read through it.
10:36   6         Q.  And let's see.  I'm just going to go to
10:36   7    the third page.  Can you just review that and tell me
10:36   8    when you're done reviewing it?
10:37   9         A.  Is this the same job card?
10:37  10         Q.  Yes.  This all came together.  But let me
10:37  11    ask you.  That would be indicated by the incident
10:37  12    number; correct?
10:37  13         A.  Yes, sir.
10:37  14         Q.  So this one the last three numbers are
10:37  15    305.  So if we go up here, incident number -- okay.
10:37  16    So it's a different incident number.  But if we look
10:37  17    at it, does this just list a different 911 caller?
10:37  18              MR. NAYLON:  Object to the form.
10:37  19         A.  It lists another name, but I don't know
10:37  20    that that's another 911 caller because it doesn't give
10:37  21    me any information, and it has a different location.
10:37  22    That's why I asked if it was a different job card.
10:37  23         Q.  It was produced by -- well, I guess me
10:37  24    from the -- it was obtained from the District
10:38  25    Attorney's Office together, so it came as one
```



|  | 1 | OFFICER DARYL HOGG - BY MR. SHIELDS |

1                    OFFICER DARYL HOGG - BY MR. SHIELDS

10:38  2    document.  So that's why I wanted to ask you questions

10:38  3    about it.

10:38  4           So is there a place where it might list if

10:38  5    two job cards were related to the same job if two

10:38  6    different 911 callers called about an incident?

10:38  7        A.  It should have the same incident number or

10:38  8    what we call the CR number.

10:38  9        Q.  Okay.  Here's the incident number; right?

10:38 10    There's that one on this one.  Case number.

10:38 11    Cross-references?  Would that indicate -- so we've got

10:38 12    595 as the last three numbers in the cross-reference.

10:38 13    If we go up here, 959.  Did I read that other one

10:38 14    wrong?  Let's see.  959.

10:38 15           Do those look like the same two numbers to

10:38 16    you on page 3 under cross-reference and then page 1 as

10:39 17    incident number?

10:39 18        A.  They're the same numbers, yes.

10:39 19        Q.  So would that indicate to you that they're

10:39 20    related to the same incident?

10:39 21           MR. NAYLON:  Form.

10:39 22        A.  I don't know that they're related, but it

10:39 23    says that they're the same numbers.

10:39 24        Q.  On page 2 here at 1641 it says "Strong,"

10:39 25    and then it lists your name; correct?



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | OFFICER DARYL HOGG - BY MR. SHIELDS                     |
| 10:39 | 2  | A.  It does.                                            |
| 10:39 | 3  | Q.  So that's the second page of the four-page          |
| 10:39 | 4  | document.  And then if we fast forward to page 3, it    |
| 10:39 | 5  | says 1640, and it lists you again; is that right?       |
| 10:39 | 6  | A.  It does.                                            |
| 10:39 | 7  | Q.  So let's go back to page 2.  I'm just               |
| 10:39 | 8  | going to ask you some questions about it.               |
| 10:40 | 9  | Now, can you tell me generally from                     |
| 10:40 | 10 | looking at this document what it looks like this        |
| 10:40 | 11 | indicates happened?                                     |
| 10:40 | 12 | MR. NAYLON:  Form.                                      |
| 10:40 | 13 | A.  I can read it to you.  It says (as read):           |
| 10:40 | 14 | One MB -- which stands for male black -- left in a      |
| 10:40 | 15 | gray four -- or vehicle four-door.  Last seen towards   |
| 10:40 | 16 | Brooks.  And the others have -- I think that says       |
| 10:40 | 17 | disappeared, but I don't know.  It's kind of -- I       |
| 10:40 | 18 | don't know.  It says D-I-S-P-E and then -- yeah, I      |
| 10:40 | 19 | don't know what that word is, to tell you the truth.    |
| 10:40 | 20 | Q.  Maybe disappeared or dispersed?                     |
| 10:40 | 21 | A.  It might have been dispersed, yes.                  |
| 10:40 | 22 | Q.  And then down below that it says (as                |
| 10:40 | 23 | read):  Another call said males had guns in the car.    |
| 10:40 | 24 | Last seen at 38 Bradburn towards Maxwell.  They had     |
| 10:40 | 25 | two handguns.                                           |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|        |    | OFFICER DARYL HOGG - BY MR. SHIELDS |
|--------|----|---|
| 10:40  | 2  | A.  Okay. |
| 10:41  | 3  | Q.  Right?  And then it says one was wearing |
| 10:41  | 4  | camo and another had a black hoodie? |
| 10:41  | 5  | A.  Yes, sir. |
| 10:41  | 6  | Q.  It says (as read):  One has the name of |
| 10:41  | 7  | Sheldon. |
| 10:41  | 8  | Right? |
| 10:41  | 9  | A.  Correct. |
| 10:41  | 10 | Q.  And then it says (as read):  See complaint |
| 10:41  | 11 | at 38 Bradburn.  It was her son they were fighting. |
| 10:41  | 12 | Right? |
| 10:41  | 13 | A.  Okay. |
| 10:41  | 14 | Q.  All right.  So then it says that you were |
| 10:41  | 15 | onscene at 1546; right? |
| 10:41  | 16 | A.  Yes. |
| 10:41  | 17 | Q.  And up here it says -- at 1505 it lists |
| 10:41  | 18 | A-S-S-T.  Is that assist?  Assisting officer? |
| 10:41  | 19 | A.  Yes.  So I would have been the backup |
| 10:41  | 20 | officer on that call. |
| 10:41  | 21 | Q.  Do you have any idea what you did between |
| 10:41  | 22 | 1505 and 1546? |
| 10:41  | 23 | A.  No, sir. |
| 10:41  | 24 | Q.  And then if you fast forward to 1641, it |
| 10:42  | 25 | says D-I-S-P-E-R. |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|       |    |                                                      |
|-------|----|------------------------------------------------------|
|       | 1  | OFFICER DARYL HOGG - BY MR. SHIELDS                   |
| 10:42 | 2  | Do you know what that means?                         |
| 10:42 | 3  | A.  Dispatched.                                       |
| 10:42 | 4  | Q.  So you were dispatched to Strong Hospital;        |
| 10:42 | 5  | is that right?                                        |
| 10:42 | 6  | A.  I would assume that's what that means,            |
| 10:42 | 7  | yes.                                                  |
| 10:42 | 8  | Q.  And right here it says "Loretta Cromes,"          |
| 10:42 | 9  | and it says "DUP."  Does that mean duplicate?         |
| 10:42 | 10 | A.  Honestly, I don't know what that stands           |
| 10:42 | 11 | for.                                                  |
| 10:42 | 12 | Q.  Do you know what 400 Elmwood Ave. is?             |
| 10:42 | 13 | A.  400 Elmwood Ave.?  No.  That's really -- I        |
| 10:42 | 14 | don't even know if there is a 400 Elmwood Ave.        |
| 10:42 | 15 | Q.  Is that Strong Hospital?                          |
| 10:42 | 16 | A.  No.                                               |
| 10:42 | 17 | Q.  Now, this says down here at 1709.  So you         |
| 10:42 | 18 | would have been at Strong Hospital at that time;      |
| 10:43 | 19 | right?  It says (as read):  Complainant stated he     |
| 10:43 | 20 | engaged in a fight.  And when RO asked questions about|
| 10:43 | 21 | the incident, complainant refused to provide any info |
| 10:43 | 22 | and became uncooperative.                             |
| 10:43 | 23 | Is that what that says?                               |
| 10:43 | 24 | A.  Yes, sir.                                         |
| 10:43 | 25 | Q.  Does it say who the complainant was?              |



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

|  | 1 | OFFICER DARYL HOGG - BY MR. SHIELDS |

10:43   2       A.  I don't see that anywhere, no.

10:43   3       Q.  But this says that Loretta Cromes was the

10:43   4   mother; right?  Is that what this says here?  Or is

10:43   5   that down here?  Complainant Loretta Cromes.  She says

10:43   6   her son was assaulted and hit in the head with a gun.

10:43   7       A.  If that's what she told 911, but it

10:43   8   doesn't say that that's who was saying it.  It just

10:43   9   says "Entry."

10:43  10       Q.  Okay.  But that's what that says Loretta

10:44  11   says; right?  It says "Entry"?

10:44  12       A.  No.  It gives the name of what appears to

10:44  13   be a caller, and then it says someone stated that the

10:44  14   complainant was assaulted and it was her son.  But...

10:44  15       Q.  All right.  Do you remember that incident?

10:44  16       A.  Absolutely not.

10:44  17       Q.  So that was the same day as the incident

10:44  18   involving Anthony Miller; correct?

10:44  19       A.  Can you go back up to the top?  It says

10:44  20   the 25th.  Correct.

10:44  21       Q.  So it was the 25th, and it says at

10:44  22   1505 p.m.  So that's 3:05 p.m.; right?

10:44  23       A.  Correct.

10:44  24       Q.  It says that Prinzi was dispatched; right?

10:44  25       A.  It does.



|       |    |                                                       |
|-------|----|-------------------------------------------------------|
|       | 1  | OFFICER DARYL HOGG – BY MR. SHIELDS                    |
| 10:44 | 2  | Q.  And then it says at 3:05 p.m. that you            |
| 10:45 | 3  | were dispatched as the number two officer, the        |
| 10:45 | 4  | assisting officer; correct?                           |
| 10:45 | 5  | A.  Yes, sir.                                          |
| 10:45 | 6  | Q.  And then it says that you arrived onscene          |
| 10:45 | 7  | at 1546?                                               |
| 10:45 | 8  | A.  That's what the job card says, yes.                |
| 10:45 | 9  | Q.  And then it says that you went to Strong           |
| 10:45 | 10 | Hospital at 1641; correct?                             |
| 10:45 | 11 | A.  Correct.                                           |
| 10:45 | 12 | Q.  And then it says that you went and you             |
| 10:45 | 13 | spoke with the complainant at the hospital, and       |
| 10:45 | 14 | basically he answered a few questions but then became |
| 10:45 | 15 | uncooperative; is that right?                          |
| 10:45 | 16 | A.  It says he refused to provide any                  |
| 10:45 | 17 | information and then became uncooperative.             |
| 10:45 | 18 | Q.  And that entry is made at 1709, or                 |
| 10:45 | 19 | 5:09 p.m.; is that right?                              |
| 10:45 | 20 | A.  Yep.  Yes.  I'm sorry.                             |
| 10:45 | 21 | Q.  So it looks like you were at the hospital          |
| 10:45 | 22 | until about 5:09 p.m.?                                 |
| 10:45 | 23 | A.  By the job card, yes.                              |
| 10:46 | 24 | Q.  And so for the first few hours of your             |
| 10:46 | 25 | shift that day you were investigating an assault that |



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

|       | 1  | OFFICER DARYL HOGG - BY MR. SHIELDS |
| 10:46 | 2  | happened at 38 Bradburn Street; is that right? |
| 10:46 | 3  | A.  By the looks of the job card, yes. |
| 10:46 | 4  | Q.  And if I told you that the victim, his |
| 10:46 | 5  | name was Brooklyn Cromes, does that refresh your |
| 10:46 | 6  | recollection at all? |
| 10:46 | 7  | A.  No. |
| 10:46 | 8  | Q.  Does the name Brooklyn Cromes -- is that |
| 10:46 | 9  | familiar to you at all? |
| 10:46 | 10 | A.  No. |
| 10:46 | 11 | Q.  So prior to this incident, you don't know |
| 10:46 | 12 | if you'd ever had any interactions with Brooklyn |
| 10:46 | 13 | Cromes? |
| 10:46 | 14 | A.  I do not know. |
| 10:46 | 15 | Q.  And just going back to the job card, these |
| 10:46 | 16 | numbers here, those are for your car numbers; is that |
| 10:46 | 17 | right? |
| 10:46 | 18 | A.  Yeah.  5323 is my call sign or my call |
| 10:46 | 19 | number. |
| 10:47 | 20 | Q.  And Prinzi's would have been 5313? |
| 10:47 | 21 | A.  Correct. |
| 10:47 | 22 | Q.  So as we sit here today, you don't |
| 10:47 | 23 | remember anything about that incident other than |
| 10:47 | 24 | what's on this job card? |
| 10:47 | 25 | A.  Correct.  It was ten years ago. |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

```
        1              OFFICER DARYL HOGG - BY MR. SHIELDS
10:54   2    aware of that would list all of your activities
10:54   3    throughout the day?
10:54   4              A.  No.
10:54   5              Q.  Do you know if you could -- and I ask
10:54   6    because Officer Watson testified to this yesterday --
10:55   7    that you could go into the 911 call screen and get a
10:55   8    list of all of the calls that you responded to
10:55   9    throughout the day?  Are you aware if you can do that
10:55  10    or not?
10:55  11              A.  I'm aware that you can look at your job
10:55  12    cards.  I don't know how to do that, to be honest.
10:55  13              Q.  Are you aware if -- my understanding of
10:55  14    Officer Watson's testimony is that you could go into
10:55  15    the system that prints out a job card and do a search
10:55  16    by day and name.  So it would give all of the calls
10:55  17    that you made back and forth to the system on that one
10:55  18    day, and it wouldn't list anything else.
10:55  19              Have you ever heard of whether or not
10:55  20    that's possible?
10:55  21              MR. NAYLON:  Form.
10:55  22              You can answer.
10:55  23              A.  I've never heard of an officer being able
10:55  24    to do that, no.
10:55  25              Q.  Are you aware of whether or not that could
```



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

```
        1              OFFICER DARYL HOGG - BY MR. SHIELDS
10:55   2    be done by anyone?
10:55   3              A.  I'm not positive on who can and can't do
10:56   4    that.
10:56   5              MR. SHIELDS:  Well, to the extent that
10:56   6    that's possible, Pat, we're going to call for
10:56   7    production of the activities throughout the day from
10:56   8    the 911 system, just like we did for Officer Watson
10:56   9    yesterday.  And we'll follow up in writing on that.
10:56  10              MR. NAYLON:  Thank you.
10:56  11              (Document request -- Officer Hogg's daily
10:56  12              history for September 25, 2013)
10:56  13              Q.  And, Officer Hogg, about three hours after
10:56  14    you left Strong Hospital on September 25, 2013, you
10:56  15    got a call a little after 8 p.m. about a robbery at 19
10:57  16    Roslyn Street; is that right?
10:57  17              A.  Yes, there was a call for a robbery there.
10:57  18              Q.  And where were you directed to go?
10:57  19              A.  The call came in for 19 Roslyn.
10:57  20              Q.  And where did you go?
10:57  21              A.  I was making my way towards 19 Roslyn, and
10:57  22    I ended up looking around the area of Bradburn and
10:57  23    Millbank.
10:57  24              Q.  How did you end up in the area of Bradburn
10:57  25    and Millbank?
```



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|   | 1 | OFFICER DARYL HOGG - BY MR. SHIELDS |
|---|---|---|

10:57  2       A.  I drove there.

10:57  3       Q.  And who told you to go there?

10:57  4       A.  Honestly, I don't know.

10:57  5       Q.  Did Prinzi tell you to go there?

10:57  6       A.  I don't know.

10:57  7       Q.  If I told you that Prinzi told you to go

10:57  8  there, would that sound wrong to you?

10:57  9           MR. NAYLON:  Form.

10:58 10           You can answer.

10:58 11       A.  There's a possibility.  But without

10:58 12  looking at any type of notation, I wouldn't -- I

10:58 13  couldn't tell you for sure.

10:58 14       Q.  So let's do this.  First I want to put

10:58 15  up -- I guess it will be Exhibit 2 for this

10:58 16  deposition, which is the job card for this incident.

10:58 17  And we'll look at that first.  Okay?  So let me put

10:58 18  that on the screen.

10:58 19           MR. SHIELDS:  And for the record, this is

10:58 20  the same document that was marked as -- you know what,

10:58 21  Tamara?  I think that I was mistaken earlier.  The

10:58 22  Exhibit 1 for this deposition was not put up

10:58 23  yesterday.  So what's going to be marked as Exhibit 2

10:58 24  today is actually what was marked as Exhibit 1

10:59 25  yesterday.



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

```
        1              OFFICER DARYL HOGG - BY MR. SHIELDS
10:59   2              MS. CHRISTIE:  All right.  So when you
10:59   3   send -- so you had indicated that you would send me a
10:59   4   complete packet of marked depositions from Officer
10:59   5   Watson's deposition.  So I'll get a complete set for
10:59   6   Officer Watson and a complete set for Officer Hogg's;
10:59   7   correct?
10:59   8              MR. SHIELDS:  Correct.
10:59   9          (The following exhibit was identified for the
10:59  10          record:  Number EXH 2.)
10:59  11      Q.  So, Officer Hogg, on the screen right now
10:59  12   do you see a job card?
10:59  13      A.  I do.
10:59  14      Q.  And it says up here at the top "Received
10:59  15   9/25/13 20:01:13"; is that right?
10:59  16      A.  Correct.
10:59  17      Q.  So in non-military time that's 8:01:13; is
10:59  18   that right?
10:59  19      A.  Yes, sir.
10:59  20      Q.  So do you recognize this document?
10:59  21      A.  I've not seen that document probably since
11:00  22   that day.  But it is a job card.
11:00  23      Q.  So you did not review this document to
11:00  24   prepare for your deposition today?
11:00  25      A.  I did not.
```



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

          1            OFFICER DARYL HOGG - BY MR. SHIELDS
11:18     2    for a few seconds and then hit Play on the audio.
11:19     3    Okay?
10:47     4            (Audio recording played)
11:19     5            Q.   Okay.  So I just -- I'm going to pause
11:19     6    there.
11:19     7            So did you hear Officer Prinzi just
11:19     8    respond?
11:19     9            A.   Yes.
11:19    10            Q.   And he said, "5313 primary"; is that what
11:19    11    he said?
11:19    12            A.   I believe that's what he said, yes.
11:19    13            Q.   And he said, "I've got 2-3 with me also";
11:19    14    is that what he said?
11:19    15            A.   Correct.
11:19    16            Q.   And that would be you?
11:20    17            A.   Correct.
11:20    18            Q.   Would that mean that the two of you were
11:20    19    together before you responded?
11:20    20            A.   No.
11:20    21            Q.   What would that mean to you?
11:20    22            A.   That meant that originally that call was
11:20    23    some form or another given to Officer Klein, which is
11:20    24    in a different -- we'll call it a beat at the time.
11:20    25            So we had high beat integrity.  So the 53



       1                OFFICER DARYL HOGG - BY MR. SHIELDS
11:20  2    cars were going to take care of that call as the
11:20  3    primary cars.  So he assigned me to the job with him.
11:20  4         Q.  So that does not necessarily mean that you
11:20  5    were physically together when he made that call over
11:20  6    the radio?
11:20  7         A.  Correct.
11:20  8         Q.  As we sit here today, do you remember
11:20  9    whether or not you were, in fact, physically together
11:20  10   when he responded over the radio?
11:20  11        A.  I don't recall, no.
11:20  12        Q.  All right.  So I had paused that at 24
11:21  13   seconds into the audio recording, and I'm going to hit
11:21  14   Play again.  Okay?
11:21  15            (Audio recording played)
11:22  16        Q.  All right.  So I'm just pausing there,
11:22  17   which is 1 minute and 21 seconds into the radio call.
11:22  18            And did you hear him just say, "There was
11:22  19   no mention of a bicycle"; is that what he said?
11:22  20        A.  I believe.  It was kind of garbled, but I
11:22  21   believe that's what he said.
11:22  22        Q.  Okay.  Let's just rewind that.  I'll
11:22  23   rewind it to 1 minute and 10 seconds.  I'm going to
11:22  24   hit Play again.
11:22  25            (Audio recording played)



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

|        | 1  | OFFICER DARYL HOGG - BY MR. SHIELDS |

11:22  2        Q.  "No mention of a bike, looks like foot at

11:22  3  this time"; is that what he said?

11:22  4        A.  I believe that's what I heard, yes, sir.

11:23  5        Q.  All right.  So I paused again at 1 minute

11:23  6  and 21 seconds into the audio recording.  I'm going to

11:23  7  go ahead and hit Play.

11:23  8        (Audio recording played)

11:24  9        Q.  And, Officer Hogg, I just paused it at 2

11:24 10  minutes and 7 seconds into the audio.  And my question

11:24 11  is in trying to match that up with this CAD report or

11:24 12  the job card, did you just hear the dispatcher say,

11:24 13  "Gray hoodie, jeans, southbound towards Sawyer"?

11:24 14        A.  No, that wasn't the dispatcher that said

11:24 15  that.

11:24 16        Q.  Oh, okay.  Who said that?

11:24 17        A.  The job card says it was 4933.

11:24 18        Q.  So that would have been Klein?

11:24 19        A.  Yes.

11:24 20        Q.  So it indicates that at 2006 Officer Klein

11:24 21  arrived onscene; is that what that says?

11:24 22        A.  Yes, sir.

11:24 23        Q.  So he was onscene, and he would have

11:24 24  apparently spoken with the victim, and that was what

11:24 25  he reported the victim would have said?  Is that how



```
         1              OFFICER DARYL HOGG - BY MR. SHIELDS
11:25    2    you read that and listen to the audio?
11:25    3              MR. NAYLON:  Object to the form.
11:25    4              You can answer.
11:25    5         A.  I don't know who he spoke to to get that
11:25    6    information.  It doesn't say there.  It just says that
11:25    7    4933 said that information.
11:25    8         Q.  So he arrived onscene, and then he
11:25    9    reported that information over the radio; is that
11:25   10    right?
11:25   11         A.  From what I'm seeing on the job card, yes.
11:25   12         Q.  And from what we heard on the audio?
11:25   13         A.  Correct.
11:25   14         Q.  And so at this point on the job card and
11:25   15    in the audio that we're listening to, that's the only
11:25   16    information that you had; correct?
11:25   17         A.  Correct.
11:25   18         Q.  All right.  So we're paused at 2 minutes
11:25   19    and 7 seconds into the audio.  I'm going to go ahead
11:25   20    and hit Play again.
11:25   21              (Audio recording played)
11:26   22         Q.  So I paused at 2 minutes and 22 seconds
11:26   23    into the audio.
11:26   24              Officer Hogg, do you know who the last
11:26   25    voice was that we just heard speaking on the audio?
```



         1              OFFICER DARYL HOGG - BY MR. SHIELDS
11:26    2         A.   I couldn't hear the car number, no.
11:26    3         Q.   Do you recognize the voice at all?
11:26    4         A.   No.
11:26    5         Q.   So I'm going to rewind it and just ask if
11:26    6    you can listen to that again.  So I'm rewinding to 2
11:26    7    minutes and 10 seconds into the audio, and I'm going
11:26    8    to play that again.  See if you can listen to what
11:26    9    that person was saying, and see if you recognize that
11:26   10    person's voice.
11:27   11              (Audio recording played)
11:27   12         Q.   So I just paused again at 2 minutes and 23
11:27   13    seconds.  So my first question is going to be after
11:27   14    listening to that portion again, Officer Hogg, if you
11:27   15    recognize that person's voice.
11:27   16         A.   He announced 5313 is Officer Prinzi.
11:27   17         Q.   Okay.  So you heard Officer Prinzi
11:27   18    announce his car number?
11:27   19         A.   Yes.
11:27   20         Q.   And were you able to make out what he
11:27   21    said?
11:27   22         A.   From what I understood he said was have
11:27   23    some cars go near Bradburn and Millbank due to a fight
11:27   24    from earlier, a call that he was on.
11:27   25         Q.   And did you hear him say anything else?



```
          1              OFFICER DARYL HOGG - BY MR. SHIELDS
11:27     2         A.  Yes.  He said I -- something with about
11:27     3    See Set from earlier.
11:27     4         Q.  So basically he -- does that match up --
11:27     5    does that make sense if we think back to the first
11:28     6    exhibit that we looked at -- and I can put it up real
11:28     7    quick for us, Exhibit 1 for this deposition -- where
11:28     8    you and Officer Prinzi had apparently responded to the
11:28     9    area of Millbank and Bradburn?
11:28    10              MR. NAYLON:  Object to the form.
11:28    11              You can answer.
11:28    12         A.  I don't understand what your question is
11:28    13    asking.
11:28    14         Q.  Okay.  So my question is he said can we
11:28    15    get some cars to go to the area of Millbank and
11:28    16    Bradburn; correct?  That's what we just heard in the
11:28    17    audio?
11:28    18         A.  Correct.
11:28    19         Q.  And he said, you know, the description
11:28    20    matches someone from my call from earlier; it could
11:28    21    have been one of those See Set kids.  Is that what he
11:28    22    said?
11:28    23              MR. NAYLON:  Form.
11:28    24              You can answer.
11:28    25         A.  No.  What he said was to go to that area
```



```
          1              OFFICER DARYL HOGG - BY MR. SHIELDS
11:28     2    because we had a call there earlier.
11:28     3              Q.  And then did you catch what he said about
11:28     4    the See Set kids?
11:28     5              A.  He said we had a call with some See Set
11:29     6    kids there earlier.
11:29     7              Q.  All right.  So does that refresh your
11:29     8    recollection as to whether the individual named
11:29     9    Sheldon was Sheldon Lipford, who was a member of See
11:29    10    Set?
11:29    11              MR. NAYLON:  Form.
11:29    12              You can answer.
11:29    13              A.  No, it does not.
11:29    14              Q.  Does that refresh your recollection at all
11:29    15    about your earlier response in that day as reflected
11:29    16    in the job card that we marked as Exhibit 1?
11:29    17              A.  It doesn't refresh my memory at all
11:29    18    because it was so long ago I don't remember
11:29    19    responding.  From what you're showing me on the job
11:29    20    cards, it says that I went there.
11:29    21              Q.  And then from listening to Officer Prinzi,
11:29    22    apparently something to do with that earlier call also
11:29    23    involved the See Set gang?
11:29    24              MR. NAYLON:  Form.
11:29    25              You can answer.
```



**ALLIANCE**
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

```
              1              OFFICER DARYL HOGG - BY MR. SHIELDS
11:29         2        A.   From what he said, it was go to that area.
11:29         3   We had a call there earlier involving that gang.
11:29         4        Q.   So basically he was saying, hey, you know,
11:30         5   go over there because we had this call earlier because
11:30         6   of a call related to this gang?
11:30         7             MR. NAYLON:   Form.
11:30         8             You can answer.
11:30         9        A.   That's what I would assume he would say.
11:30        10        Q.   So I'm just going to play that part again.
11:30        11   I'm going to play it a little further, and then I'll
11:30        12   hit pause, and then we can take a break in a few
11:30        13   minutes.  Okay?
11:30        14        A.   Okay.
11:30        15        Q.   So I'm going to rewind again to the same
11:30        16   spot that I started before right at 2 minutes and 10
11:30        17   seconds into the audio.  And then I'm just going to
11:30        18   ask you to listen again to what Officer Prinzi said,
11:30        19   and then I'll pause it and ask you a couple more
11:30        20   questions.  Okay?
11:30        21        A.   Okay.
11:30        22             (Audio recording played)
11:31        23        Q.   So I paused right at 2 minutes and 30
11:31        24   seconds into the audio.
11:31        25             Now, my first question is -- I'm going to
```



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

1          OFFICER DARYL HOGG - BY MR. SHIELDS

11:31   2   go backwards chronologically -- did you hear yourself

11:31   3   say 5323 and then that you were in the area and you

11:31   4   were going to respond over there?

11:31   5          A.  I did hear that, yes.

11:31   6          Q.  And then if we go back and back to what

11:31   7   Prinzi said, did he say anything about a description?

11:31   8   Did you hear any -- did you hear anything from him

11:31   9   about a match of a description?

11:31  10          MR. NAYLON:  Form.

11:31  11          A.  To what I understood that I heard --

11:31  12   again, it was kind of garbled -- but it sounded like

11:31  13   he might have said "description of a call from

11:31  14   earlier."

11:31  15          Q.  Description of a call and not a

11:32  16   description of a person?

11:32  17          A.  I don't think he specifically said a

11:32  18   person, no.

11:32  19          Q.  Okay.  I'm just trying to see what your

11:32  20   understanding of what he said there was based on, you

11:32  21   know, working with Officer Prinzi and the way that he

11:32  22   would call out a call like this over the radio.

11:32  23          So you know what I want to do?  I want to

11:32  24   play it one more time, and then just see if that's

11:32  25   still your understanding, and then maybe we can take a



|       |    | OFFICER DARYL HOGG - BY MR. SHIELDS |
|-------|----|-------------------------------------|

```
           1            OFFICER DARYL HOGG - BY MR. SHIELDS
12:10      2    the street?
12:10      3            A.  I did not.
12:10      4            Q.  As we sit here today, do you know who
12:10      5    those two individuals were who you saw at the area of
12:10      6    Millbank and Bradburn when you arrived on September
12:10      7    25, 2013?
12:10      8            A.  I know one.
12:10      9            Q.  And is that the Plaintiff in this case,
12:10     10    Anthony Miller?
12:10     11            A.  Yes.
12:10     12            Q.  And so you're not aware of who the other
12:10     13    individual was?
12:10     14            A.  I don't recall his name.
12:11     15            Q.  What do you recall about the other
12:11     16    individual?
12:11     17            A.  Male black.
12:11     18            Q.  Anything else?
12:11     19            A.  Not without looking at my report again,
12:11     20    no.
12:11     21            Q.  So at the time of the incident, did you
12:11     22    recognize either Mr. Miller or the other individual
12:11     23    that he was with?
12:11     24            A.  No.
12:11     25            Q.  So you're not sure of whether you had ever
```



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

```
         1              OFFICER DARYL HOGG - BY MR. SHIELDS
12:11    2    had any prior police contact with them?
12:11    3              A.  As I sit here today, I can't tell you
12:11    4    whether I have had that or not.
12:11    5              Q.  Do you remember where they were standing
12:11    6    or where they were located when you arrived in the
12:11    7    area of 22 -- I'm sorry -- when you arrived at the
12:12    8    area of Millbank and Bradburn Street?
12:12    9              A.  From the testimony you just showed me,
12:12   10    they were standing near the street.
12:12   11              Q.  Do you have an independent recollection of
12:12   12    where they were standing when you stopped them?
12:12   13              A.  No.
12:12   14              Q.  When you arrived, were there any other
12:12   15    police personnel present?
12:12   16              A.  Not when I arrived.
12:12   17              Q.  Do you remember if it was dark outside?
12:12   18              A.  Don't remember, to be honest.
12:12   19              Q.  Do you remember what the weather was like?
12:12   20              A.  I remember it being cold, but I can't tell
12:12   21    you how cold.
12:12   22              Q.  Do you remember anything else about the
12:12   23    weather?
12:12   24              A.  Not today I can't.
12:12   25              Q.  And what communications did you have with
```



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|       |    | OFFICER DARYL HOGG - BY MR. SHIELDS |
|-------|----|-------------------------------------|
| 12:12 | 2  | anyone on the scene after you got out of your car? |
| 12:13 | 3  | A.  Does that encapsulate anyone in general; |
| 12:13 | 4  | is that what you're asking?  Or are we asking |
| 12:13 | 5  | police -- I'm not sure really who you're asking about. |
| 12:13 | 6  | Q.  Did you speak with either Anthony or his |
| 12:13 | 7  | companion after you got out of the car? |
| 12:13 | 8  | A.  I would imagine I did, yes. |
| 12:13 | 9  | Q.  Do you remember what you said to them? |
| 12:13 | 10 | A.  I do not. |
| 12:13 | 11 | Q.  As you approached them, do you remember if |
| 12:13 | 12 | you said anything about the incident that happened on |
| 12:13 | 13 | Bradburn Street earlier in the day that you had |
| 12:13 | 14 | responded to? |
| 12:13 | 15 | A.  I don't. |
| 12:13 | 16 | Q.  You -- I'm sorry.  I missed your answer. |
| 12:13 | 17 | A.  I do not. |
| 12:13 | 18 | Q.  Would it make sense that you would have |
| 12:13 | 19 | mentioned the incident that had happened earlier on |
| 12:14 | 20 | Bradburn Street to them when you stopped them? |
| 12:14 | 21 | MR. NAYLON:  Object to the form. |
| 12:14 | 22 | You can answer. |
| 12:14 | 23 | A.  No. |
| 12:14 | 24 | Q.  Even though you responded to the scene |
| 12:14 | 25 | because Officer Prinzi said that the description of |



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920