```
                   UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -
ANTHONY MILLER,
       Plaintiff,
                           22-CV-6069 (FPG)(MJP)
v.

THE CITY OF ROCHESTER, MARYROSE M. WENGERT AND
EARL G. WENGERT, AS CO-EXECUTORS OF THE ESTATE OF
NOLAN WENGERT (deceased), DARYL HOGG, JASON
PRINZI, DANIEL WATSON, and "JOHN DOE" RPD
OFFICERS 1-10,
       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - -
                       THE STATE OF NEW YORK
                          COURT OF CLAIMS
- - - - - - - - - - - - - - - - - - - - - - - - - -
ANTHONY MILLER,
       Plaintiff,
                                Claim No. 135854
v.

THE STATE OF NEW YORK,
       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - -

Video-recorded Deposition Upon Oral Examination of:

                  Officer Daniel Watson


Location:      Alliance Court Reporting, Inc.
               109 South Union Street, Suite 400
               Rochester, New York 14607

Date:          March 8, 2023


Time:          9:45 a.m.


Reported By:   MICHELLE MUNDT ROCHA
               Alliance Court Reporting, Inc.
               109 South Union Street, Suite 400
               Rochester, New York 14607
```



```
 1                    A P P E A R A N C E S

 2    Appearing Remotely on Behalf of Plaintiff:

 3    Elliot D. Shields, Esq.
         Roth & Roth LLP
 4       192 Lexington Avenue, Suite 802
         New York, New York  10016
 5       eshields@rothandrothlaw.com

 6    Also Remotely Present:

 7    Anthony Miller

 8
      Appearing on Behalf of Defendants
 9    The City of Rochester, Maryrose M. Wengert and
      Earl G. Wengert, as co-executors of the Estate of
10    Nolan Wengert (deceased), Daryl Hogg, Jason Prinzi,
      Daniel Watson, and "John Doe" RPD Officers 1-10:
11
      Patrick B. Naylon, Esq.
12       City of Rochester Law Department
         City Hall, Room 400A
13       30 Church Street
         Rochester, New York  14614-1224
14       patrick.naylon@cityofrochester.gov

15
      Appearing Remotely on Behalf of Defendant
16    The State of New York:

17    Tamara B. Christie, Esq.
         New York State Office of the Attorney General
18       Court Exchange Building
         144 Exchange Boulevard, Suite 200
19       Rochester, New York  14614-2176
         Tamara.Christie@ag.ny.gov

20

21    Also Present:

22    Peter H. Colucci, Videographer
         Alliance Court Reporting, Inc.
23       109 South Union Street, Suite 400
         Rochester, New York  14607
24
                        *     *     *
25
```



```
 1                  S T I P U L A T I O N S
 2   WEDNESDAY, MARCH 8, 2023;
 3             (Proceedings in the above-titled matter
 4             commencing at 9:47 a.m.)
 5                        *     *     *
 6             IT IS HEREBY STIPULATED by and between the
 7   attorneys for the respective parties that this
 8   deposition may be taken by the Plaintiff at this time
 9   pursuant to notice;
10             IT IS FURTHER STIPULATED, that all
11   objections except as to the form of the questions and
12   responsiveness of the answers, be reserved until the
13   time of the trial;
14             IT IS FURTHER STIPULATED, that pursuant to
15   Federal Rules of Civil Procedure 30(e)(1) the witness
16   requests to review the transcript and make any
17   corrections to same before any Notary Public;
18             IT IS FURTHER STIPULATED, that if the
19   original deposition has not been duly signed by the
20   witness and returned to the attorney taking the
21   deposition by the time of trial or any hearing in this
22   cause, a certified transcript of the deposition may be
23   used as though it were the original;
24             IT IS FURTHER STIPULATED, that the
25   attorneys for the parties are individually responsible
```



1                P R O C E E D I N G S
2     for their certified transcript charge, including any
3     expedite or other related production charges in
4     accordance with Rochester Rules, and Mr. Shields will
5     be responsible for Ms. Christie's certified transcript
6     charge;
7              AND IT IS FURTHER STIPULATED, that the
8     Notary Public, MICHELLE MUNDT ROCHA, may administer
9     the oath to the witness.
10                    *      *      *
11              THE VIDEOGRAPHER:  Good morning.  We are
12    on the record at 9:47 a.m.  Today is Wednesday, March
13    8, 2023.  My name is Peter Colucci, of Alliance Court
14    Reporting, located at 109 South Union Street, Suite
15    400 in Rochester, New York.
16              We are at the location of Alliance Court
17    Reporting.  We are about to begin the video-recorded
18    deposition of Daniel Watson in the matter of Anthony
19    Miller versus the City of Rochester, et al.
20              Would the attorneys please announce their
21    appearances for the record.
22              MR. SHIELDS:  For the Plaintiff Anthony
23    Miller, Elliot Shields, Roth and Roth LLP.
24              MR. NAYLON:  Pat Naylon, City of Rochester
25    Law Department, for City of Rochester and the



1        OFFICER DANIEL WATSON - BY MR. SHIELDS
2   Defendants.
3             MS. CHRISTIE:  And just for the court
4   reporter's purposes, there should be a double caption
5   on this, I think.  There's two actions that are being
6   covered by this deposition.  The one against -- from
7   Mr. Miller to the City, and then the second one where
8   I come in is Anthony Miller versus the State of New
9   York, which is the Court of Claims action, and I am
10  representing the State.  And that is Claim Number
11  135854.
12            THE VIDEOGRAPHER:  The court reporter
13  today is Michelle Rocha, of Alliance Court Reporting.
14  The witness may be sworn in.
15  OFFICER DANIEL WATSON,
16        called herein as a witness, first being sworn,
17        testified as follows:
18        EXAMINATION BY MR. SHIELDS:
19        Q.  Morning, Officer.
20        A.  Good morning.
21        Q.  My name is Elliot Shields.  I represent
22  Anthony Miller, who was wrongfully convicted and spent
23  six years in jail for a crime he didn't commit.  I'm
24  going to ask you some questions today.
25            Okay?



```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2     heard over the radio at the time on that day before
 3     you responded to Millbank and Bradburn?
 4               MR. NAYLON:  Form.
 5          A.   I don't recall.
 6          Q.   But as we're sitting here and looking at
 7     the CAD report and listening to the audio recording,
 8     we matched up the timeline, and that's something that
 9     was called out over the radio before you called out as
10     indicated on the CAD report that you responded to that
11     area; correct?
12               MR. NAYLON:  Form.
13          A.   Right.  I'm just stating that I can't -- I
14     can't answer if I heard that on that day.  That's what
15     I'm answering to.
16          Q.   So on that day that radio call was made
17     before you responded to the area of Millbank and
18     Bradburn; correct?
19          A.   That's correct.
20          Q.   And when you're responding to a call, are
21     you listening to the radio?
22          A.   Yes.  I just do not know what I was --
23     what job I was prior to that.  Because I'm not even on
24     this job yet, as you can see by the CAD display.
25          Q.   Okay.  So basically how would you respond
```



69

```
 1           OFFICER DANIEL WATSON - BY MR. SHIELDS
 2   and get onto the job?
 3           A.   Either on the computer you can do it by
 4   typing it in or get on the radio.  Or in this case it
 5   would probably be the admin channel because the
 6   primary channel's tied up.
 7           Q.   So what's the admin channel?
 8           A.   Channel 5.
 9           Q.   Is that something that would be recorded
10   on the CAD report or no?
11           A.   Yes, if it -- yes.
12           Q.   Okay.  So is that recorded here, then, on
13   Exhibit 1 that is displayed on the screen?
14                MR. NAYLON:  Is what recorded there?
15           Q.   Is the response --
16                MR. SHIELDS:  And, Pat, I'm just going to
17   ask for you to let the officer say if he's confused
18   and not, you know, seek clarification for him.  But
19   I'll withdraw my question.
20           Q.   And, Officer, my question is as we look at
21   this Exhibit 1, the CAD report, and you see at 2007
22   that it says assist onscene and 2 -- 5223, which was
23   you, you said you weren't on the job yet; correct?
24   Before this, you weren't on the job; right?
25           A.   Correct.  Until that point right there.
```



```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2       Q.   So before that, you never called out that
 3   you were going to respond to this job at all; correct?
 4       A.   Correct.
 5       Q.   So the first time that you called out that
 6   you were going to be on the job was when you were
 7   already onscene?
 8       A.   Yes, it looks like I was onscene at
 9   Millbank and Bradburn.
10       Q.   And is that normal for you to not call out
11   until you're already on the scene?
12            MR. NAYLON:  Form.
13            You can answer.
14       A.   With a lot of radio traffic going on, it's
15   not out of the question, no.
16       Q.   So -- and you said before that you might
17   have responded on channel 5; is that right?
18       A.   Correct.
19       Q.   So channel 5 might not have been recorded
20   on this document that we've marked as Exhibit 1, the
21   CAD report?
22       A.   If you're on channel 5, it has a
23   dispatcher assigned to it, so it would be on that
24   form.  So that -- I don't know what the 8045 number
25   is.  That could be a different dispatcher if I did it
```



```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2    on channel 5.
 3            Q.   Would you normally call out to the other
 4    officers that you were going to respond before you
 5    arrived onscene?
 6            MR. NAYLON:  Form.
 7            A.   It depends on the situation.
 8            Q.   In a situation like this where there was a
 9    call for an armed robbery, would you normally call out
10    to the other officers that you were responding before
11    you arrived onscene?
12            MR. NAYLON:  Object to the form.
13            You can answer.
14            A.   It depends on where I was.  So if I was
15    just in that area pulling up with Officer Hogg, then
16    I'd call in that I was the primary.
17            Q.   Now, is the area of Millbank and Bradburn
18    within the geographic confines of your 52 beat?
19            A.   No.  It's 53.
20            Q.   But you might have been in the 53 area?
21    That's, like, not something that would be uncommon at
22    that time?
23            A.   That's correct.
24            Q.   So you could have just been, like, right
25    around the corner from Millbank and Bradburn and
```



```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2     responded right to the scene?
 3            A.   Yeah, I don't know where I was.
 4            Q.   As we sit here today, you have no
 5     independent recollection of what you were doing
 6     immediately before you responded to the scene?
 7            A.   No.
 8            Q.   So as far as the CAD report goes, it
 9     reports that at 8:07 on November 25, 2013, you arrived
10     on the scene at Millbank and Bradburn; correct?
11            A.   That's correct.
12            Q.   And that was after we heard on the radio
13     Officer Prinzi asks officers to go to that area;
14     correct?
15            A.   Correct.
16            Q.   So after Prinzi asks for officers to go to
17     that area, first Hogg arrives there, and then you
18     arrive shortly after him?
19            A.   That's correct.
20            Q.   And then what happened next?
21            A.   I would have to see the report.
22            Q.   As we sit here today, what's the next
23     thing that you remember happening?
24            A.   I don't recall anything.
25            Q.   Do you recall arriving at the scene that
```



```
 1              OFFICER DANIEL WATSON - BY MR. SHIELDS
 2     day?
 3            A.   I do not.
 4            Q.   Let's just finish going through the CAD
 5     report and the radio call and see if that refreshes
 6     your recollection at all.  Okay?
 7            A.   Okay.
 8            Q.   So we've got 8:07 you arrive onscene, and
 9     then the next thing that's reported here is another
10     officer assist or enroute to 19 Roslyn; right?  And
11     then 2008 -- so that would be 8:08 p.m. correct --
12     5313.   That was -- that's Prinzi; correct?
13            A.   Correct.
14            Q.   All right.  And it says -- one second.
15     I've got a little computer glitch here.
16                 You can still see the document displayed
17     on the screen over there?
18            A.   Yes.
19            Q.   So it says 5313 (as read):  Was with
20     another male black red/gray hoodie on bike in area
21     together.
22                 Correct?
23            A.   Yep.
24            Q.   So that's at 8:08, and that's after you
25     and Hogg had arrived on the scene at Millbank and
```



```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2     Bradburn; right?
 3            A.   According to this document, yes.
 4            Q.   All right.  So let's go back to the audio
 5     recording that we marked as Exhibit 2, the radio
 6     calls.  And so we had paused at 2 minutes and 23
 7     seconds into that recording, and I'm going to hit Play
 8     again.  Okay?
 9            (Audio recording played)
10            Q.   Now, I paused at 2:36 into the audio.
11     Officer Watson, the last thing we heard there, do you
12     know if that was you calling out?
13            A.   That was my car number, yes.
14            Q.   So that was you calling out your car
15     number, 5223?
16            A.   Correct.
17            Q.   So that was right before we paused at 2:36
18     into the audio.  And do you know what you were saying
19     when you called out your car number there?
20            A.   I do not.
21            Q.   So I'm just going to rewind to 2:30 into
22     the recording.  I just want to understand what you
23     called out your car number for.
24            (Audio recording played)
25            Q.   I'm sorry.  Did you hear yourself again?
```



```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2          A.   Yes.
 3          Q.   Do you know what the call number for your
 4   car -- what that indicated?
 5          A.   That was me adding myself to the job.
 6          Q.   When you called out and added yourself to
 7   the job, did that mean -- does the CAD report indicate
 8   that you had arrived onscene?
 9          A.   I don't know where I was exactly.  The CAD
10   report says onscene, but that could be anything.
11   Because I don't believe I was out with Officer Hogg
12   prior to that.
13          Q.   You don't remember being with Hogg, like,
14   and arriving at the scene together?
15          A.   No.
16          Q.   Sometimes the -- well, let's keep
17   listening, I guess, and see if you call out onscene or
18   something like that.
19               Would that be something that you'd
20   normally do, call out and say "Onscene"?
21          A.   Typically.
22          Q.   So that's how they know to put the
23   notation into the document that says that you have
24   arrived onscene?
25          A.   Correct.
```



```
 1         OFFICER DANIEL WATSON - BY MR. SHIELDS
 2         Q.   Okay.  So I had paused Exhibit 2, the
 3   radio call, to 2 minutes and 45 seconds in, but I just
 4   want to rewind it back to 2 minutes and 30 seconds
 5   again, which was about 5 to 6 seconds before you said
 6   previously that you heard yourself call your car
 7   number out.  I want to listen to that and then go
 8   forward a little bit and see if we can hear you call
 9   out that you had arrived onscene.
10              So if I could ask you to just, you know,
11   say "Oh, that's it" if you hear it.  Okay?
12         A.   Yes.
13         Q.   Okay.  Thanks.
14              (Audio recording played)
15         Q.   Okay.  So I'm going to pause it at 3
16   minutes and 37 seconds into the radio calls which are
17   marked as Exhibit 2.
18              And, Officer Watson, did you hear yourself
19   call out onscene at any point?
20         A.   I did not.
21         Q.   So would that indicate to you that over
22   here where it says 2007, that's when you arrived
23   onscene?
24         A.   That's when I put myself on the job.  I
25   cannot tell you if I arrived on the scene at that
```



```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2    point.
 3            Q.   But -- well, let me ask you this:  When
 4    you arrived on the scene, was Officer Hogg already
 5    there?
 6            A.   Yes.
 7            Q.   And what else do you remember from when
 8    you first arrived on the scene?
 9            A.   I don't recall.  I just have to -- I would
10    have to look at Officer Hogg's IAR to which he covered
11    me in.
12            Q.   When you arrived on the scene, do you know
13    who was there?
14            A.   I do not.
15            Q.   Now, you reviewed some documents in
16    preparation for the deposition today; right?
17            A.   Correct.
18            Q.   And did those refresh your recollection
19    about the incident at all?
20            A.   They did not.
21            Q.   So anything that you know about the
22    incident comes from the contemporaneous records that
23    were made at that time?
24            A.   It comes from the IAR that Officer Hogg
25    covered me in and this CAD printout as well as the
```



```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2   audio, yes.
 3            MS. CHRISTIE:  Mr. Shields, I just would
 4   note we've been going for about an hour and a half.
 5   So if you could take a five-minute break at some point
 6   that it's convenient for you, you know, within the
 7   next 15 minutes, I'd appreciate it.
 8            MR. SHIELDS:  Now is as good a time as
 9   ever.  So that works for me.
10            MS. CHRISTIE:  Okay.
11            MR. SHIELDS:  So it's 11:16.  You want to
12   come back maybe 11:25?
13            MS. CHRISTIE:  That's fine.
14            THE VIDEOGRAPHER:  The time is 11:17.
15   We're off the record.
16         (The proceedings recessed at 11:16 a.m.)
17         (The proceedings reconvened at 11:26 a.m.;
18         appearances as before noted.)
19            THE VIDEOGRAPHER:  The time is 11:27.
20   We're back on the record.
21   OFFICER DANIEL WATSON, resumes;
22            CONTINUING EXAMINATION BY MR. SHIELDS:
23       Q.  Officer Watson, real quick before I get
24   back to my questions, we just took a break for about
25   ten minutes.
```



ALLIANCE COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2            During that time, did you have a chance to
 3    speak with your attorney at all?
 4            A.   No, I did not.
 5            Q.   After taking a break, are there any
 6    answers to any questions that you gave that you'd like
 7    to change your answer to?
 8            A.   No.
 9            Q.   Anything that you'd like to clarify at
10    all?
11            A.   Nope.
12            Q.   So I just want to go through the rest of
13    the CAD report with you.
14            So you arrive onscene at 8:07, and at that
15    point Officer Hogg had already arrived; correct?
16            A.   Correct.
17            Q.   Now, your number is 5223; right?
18            A.   Yes.
19            Q.   So let's -- as we look at this second
20    page, can you tell me --
21            A.   You know I can't see it; correct?
22            Q.   Oh, I'm sorry.  Let me put up Exhibit 1 on
23    the screen again.
24            A.   Thank you.
25            (There was a discussion off the record.)
```



80

```
 1            OFFICER DANIEL WATSON - BY MR. SHIELDS
 2            Q.   So after you arrived, on this second page
 3   of the CAD report, what's the next entry that involves
 4   you?
 5            A.   I don't see one on this page.
 6            Q.   Okay.  So let's go to the third page.
 7   What's -- do you see anything on this third page of
 8   the CAD report that involves you?
 9            A.   Yeah, I changed the location.
10            Q.   So is that at 2032 or 8:32?
11            A.   Correct.
12            Q.   Okay.  And it says West High and Genesee?
13            A.   Correct.
14            Q.   And then right above that, is that --
15   5323, is that Hogg?
16            A.   Yes, it is.
17            Q.   So Hogg calls out right before you, and
18   then you call it out also?
19            A.   I don't recall.  I would have to hear it.
20            Q.   Okay.
21            A.   I'm assuming Officer Hogg probably just
22   did it for the both of us, but that's just an
23   assumption.
24            Q.   Okay.  So the CAD report just means that
25   both of you were changing locations, and it says (as
```



81

```
 1         OFFICER DANIEL WATSON - BY MR. SHIELDS
 2   read):  West High and Genesee with two males waiting
 3   for investigator?
 4         A.   Yes.
 5         Q.   And then it says 2034 onscene.  So that
 6   means that onscene at West High and Genesee; is that
 7   what that means?
 8         A.   Yes.
 9         Q.   And then if we go down to 2054 it says
10   positive on show-up.  Do you remember what that means
11   at all?
12         A.   Show-up procedure was done which was
13   positive.
14         Q.   Do you remember -- do you have an
15   independent recollection of any of that at all?
16         A.   No, I do not.
17         Q.   Now, do you know why you and Officer Hogg
18   took these two males into custody?
19         A.   I do not.
20         Q.   Do you have any independent recollection
21   at all of taking them into custody on September 25,
22   2013?
23         A.   I do not.
24         Q.   And when you arrived at the scene on
25   September 25, 2013, at Millbank and Bradburn, the only
```

