MONROE COUNTY GRAND JURY

---------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK    :

-vs-    :

ANTHONY MILLER    :

---------------------------------------------x

CHARGES:     ROBBERY IN THE FIRST DEGREE

PRESENTED:   September 30, 2013
             BY: MR. MICHAEL HARRIGAN,
             ASSISTANT DISTRICT ATTORNEY

REPORTED BY: MR. DAVID L. DIRAIMO

MCDA000759

2

INDEX TO WITNESSES

| | |
|---|---|
| LAW AND INSTRUCTIONS | 3 - 6 |
| JACK MOSLEY | 7 - 12 |
| NOLAN WENGERT | 13 - 16 |
| LAW AND INSTRUCTIONS | 17 |

MCDA000760

RE: A. MILLER                                    LAW AND INSTRUCTIONS

1   Testimony presented to the Monroe County Grand Jury
2   on September 30, 2013, by Mr. Michael Harrigan,
3   Assistant District Attorney.
4   Reported by: Mr. David L. DiRaimo.
5                       *     *     *
6       MR. HARRIGAN: Hello everyone. My name is
7           Michael Harrigan, H-a-r-r-i-g-a-n.
8                   Today I intend to present the
9           case of the People versus Anthony Miller,
10          common spelling, M-i-l-l-e-r.
11                  Clerk book number?
12      THE CLERK: 95.
13      MR. HARRIGAN: Number of jurors present?
14      THE FOREPERSON: Twenty-three.
15      MR. HARRIGAN: Thank you very much. I am going
16          to be -- you are going to hear from two
17          individuals, first being Jack Mosley, second
18          being Investigator Nolan Wengert.
19                  Does anyone think from me
20          reading those names they have a familiarity
21          with any of those individuals?
22      THE JURORS: (No response)
23      MR. HARRIGAN: Don't see any hands raised. I

RE:  A. MILLER                                    LAW AND INSTRUCTIONS

1              will ask you to consider one charge, one
2              count of robbery first degree, Penal Law
3              160.15 Subdivision (4):  "A person is guilty
4              of robbery in the first degree when he
5              forcibly steals property and when, in the
6              course of the commission of a crime or of
7              immediate flight therefrom, he or another
8              participant in the crime displays what
9              appears to be a pistol, revolver, rifle,
10             shotgun, machine gun or another firearm.
11                       The element that the person
12             display what appears to be a pistol,
13             revolver, rifle, shotgun, machine gun or
14             other firearm does not require proof that
15             the object displayed was actually a firearm.
16                       What is required to prove is
17             that the person consciously displayed or
18             manifested the presence of something that
19             could reasonably be perceived as a pistol,
20             revolver, rifle, shotgun, machine gun or
21             other firearm, and that the person to whom
22             the object was displayed or manifested
23             perceived it as a pistol, revolver, rifle,

RE:   A. MILLER                                   LAW AND INSTRUCTIONS

1        shotgun, machine gun or other firearm."
2                    Now in addition to that there is
3        some definitions with regards to this
4        charge.
5                    The general definition of
6        robbery is that "Robbery is forcible
7        stealing.  A person forcibly steals property
8        and commits robbery when, in the course of
9        committing a larceny, he uses or threatens
10       the immediate use of physical force upon
11       another person for the purpose of compelling
12       the owner of such property or another person
13       to deliver up the property or for the
14       purpose of engaging in other conduct which
15       aids in the commission of the larceny.
16                   A person steals property and
17       commits larceny when, with intent to deprive
18       another of property or to appropriate the
19       same to himself or to a third person, he
20       wrongfully takes, obtains or withholds such
21       property from an owner thereof.
22                   Property means any money,
23       personal property or thing of value.

MCDA000763

RE:  A. MILLER                                        LAW AND INSTRUCTIONS

1                    Intent.  A person acts
2            intentionally with respect to a result or to
3            conduct described by a statute defining an
4            offense when his conscious objective is to
5            cause such result or to engage in such
6            conduct.
7                    Knowingly.  A person acts
8            knowingly with respect to conduct or to a
9            circumstance described by a statute defining
10           of offense when he is aware that his conduct
11           is of such nature or that such circumstance
12           exists."
13                   Any questions on the law?
14       THE JURORS:  (No response)
15       MR. HARRIGAN:  Seeing none I'll call the witness.
16
17
18                    *      *      *
19
20
21
22
23

RE:  A. MILLER                                              J. MOSLEY

1                    J A C K   M O S L E Y,
2      called herein as a witness, first being duly sworn,
3      testified as follows:
4      EXAMINATION BY MR. HARRIGAN:
5   Q.  Sir, please state your name and spell your name for
6       the record.
7   A.  Jack Mosley.  J-a-c-k, M-o-s-l-e-y.
8   Q.  Where do you live?
9   A.  19 Roslyn Street.
10  Q.  Is that in the City of Rochester, County of Monroe,
11      State of New York?
12  A.  Yes.
13  Q.  Directing your attention to September 25, 2013 at
14      around eight p.m. were you home at that time?
15  A.  Yes.
16  Q.  Where were you at physically?  Were you in inside
17      your home or outside?
18  A.  I was out front sitting on the steps.
19  Q.  Were you with anyone else?
20  A.  No.
21  Q.  What were you doing while you were sitting on your
22      steps?
23  A.  I was waiting for a ride and I was on my phone.

```
                                                           8

      RE:  A. MILLER                                J. MOSLEY

 1    Q.   At some point did someone approach you?
 2    A.   Yeah.
 3    Q.   Did you recognize that person?
 4    A.   No.
 5    Q.   What were some of the things that person did or
 6         stated to you?
 7    A.   He came up to me.  I was sitting like this.  And he
 8         came up to me and put a gun to my head and grabbed
 9         the phone out of my hand and told me to give him
10         what I got.
11    Q.   Now the gun he pointed to your head, can you
12         describe what it looked like?
13    A.   It looked like a police officer's gun.  A bit
14         smaller.
15    Q.   Do you know what color it was?
16    A.   Black.
17    Q.   What did you do when he said that to you?
18    A.   I replied, "I don't have anything."  And he put his
19         hands in my pockets and pulled out what I did have,
20         ten bucks, pack of cigarettes, and keys.
21    Q.   Did he take your phone too?
22    A.   Yeah.
23    Q.   What did he do after he took the ten bucks,
```

MCDA000766

RE:  A. MILLER                                              J. MOSLEY

1            cigarettes, keys and your phone?
2     A.     He took off back down Roslyn and took a right on
3            Genesee up towards Brooks Ave.
4     Q.     Did you give that person any right, permission or
5            authority to take any of your property?
6     A.     No.
7     Q.     When he left was there anybody you saw that
8            followed him in the same direction?
9     A.     There was a gentleman on a bike across the street
10           at the store.
11    Q.     What did he do after that first guy left?
12    A.     He took off in the same direction as him.  And an
13           acquaintance of mine that didn't see the actual
14           robbery that called 911 had asked him to come over
15           and talk to him and he replied he would be right
16           back.
17         MR. HARRIGAN:  Disregard what the acquaintance
18              said.  The grand jury has to disregard that.
19              You are not allowed to hear hearsay.
20    EXAMINATION BY MR. HARRIGAN:
21    Q.     You called -- or the police were called?
22    A.     Yes.
23    Q.     The police showed up?

RE:  A. MILLER                                              J. MOSLEY

1   A.   Yes.
2   Q.   Did they show you any individuals?
3   A.   Yes.
4   Q.   How many individuals did they show you?
5   A.   Two.
6   Q.   Did you recognize the first person?
7   A.   Yes.
8   Q.   Who did you recognize that first person to be?
9   A.   The gentleman on the bike.
10  Q.   Did you recognize the second person?
11  A.   Yes.
12  Q.   Who did you recognize that person to be?
13  A.   The gentleman that robbed me.
14  Q.   When they brought the people back from the show-up
15       did they have the same clothes on?
16  A.   No.
17  Q.   The person that robbed you, did you recognize any
18       of the clothes as being the same?
19  A.   He still had the boots on that he had on.
20  Q.   What type of boots were those?
21  A.   A regular tan pair of Timberland.
22  Q.   Did you notice any difference between those
23       individuals' heights -- anything between those two

```
                                                         11

     RE:  A. MILLER                                 J. MOSLEY

 1        individuals?
 2   A.   The gentleman on the bike was probably about
 3        seventy-five pounds heavier than the gentleman that
 4        robbed me.
 5   Q.   Taller, shorter, same size?
 6   A.   He was about the same height, but bigger build.
 7   Q.   Did you notice anything about the guy that you said
 8        took your property in particular about the clothes
 9        he was in when he was returned by the police?
10   A.   It looked like he had put the other gentleman's
11        clothes on.
12          MR. HARRIGAN:  I'll ask the grand jury to
13              disregard that
14     EXAMINATION BY MR. HARRIGAN:
15   Q.   Without saying what it looked like he had done how
16        did the clothes fit?  Were they tight fitting,
17        loose fighting?
18   A.   They looked like they weren't his clothes.  They
19        were too big for him.
20          MR. HARRIGAN:  No further questions.  Any
21              questions?
22          THE JURORS:  (No response)
23          MR. HARRIGAN:  Seeing none the witness is
```

MCDA000769

```
                                                                    12

RE:  A. MILLER                                              J. MOSLEY

 1              excused.

 2

 3

 4                        (WITNESS EXCUSED)
```

RE:  A. MILLER                                               N. WENGERT

```
 1                  N O L A N   W E N G E R T,
 2     called herein as a witness, first being duly sworn,
 3     testified as follows:
 4     EXAMINATION BY MR. HARRIGAN:
 5     Q.    Please state your name for the record.
 6     A.    Investigator Nolan Wengert.  W-e-n-g-e-r-t,
 7           N-o-l-a-n.
 8     Q.    Investigator with what agency?
 9     A.    Rochester Police Department.
10     Q.    What are some of your duties as an investigator?
11     A.    Investigate mostly felony crimes.  Robberies,
12           rapes, burglaries.
13     Q.    Approximately how long have you worked in law
14           enforcement?
15     A.    About seven years.
16     Q.    I will direct your attention to September 25, 2013,
17           approximately eight p.m. or a little bit after
18           that, were you working at that time?
19     A.    Yes.
20     Q.    Did you get called to an incident?
21     A.    Yes.
22     Q.    Generally what was the nature of the investigation?
23     A.    Armed robbery.
```

RE: A. MILLER                                          N. WENGERT

```
 1   Q.   Where did you respond to?
 2   A.   19 Roslyn Street.
 3   Q.   Did you talk to an individual who you came to find
 4        to be the complainant or victim?
 5   A.   Yes.  Jack Mosley.
 6   Q.   Approximately how long from when the call came in
 7        did -- or when did you arrive?
 8   A.   About quarter after eight I believe.
 9   Q.   Did you perform any identification procedures with
10        Mr. Mosley?
11   A.   Yes.  I performed two show-up procedures.
12   Q.   Generally describe what a show-up procedure is.
13   A.   Show-up procedure is done within two hours of the
14        time of a crime.  You bring a person back and place
15        him at the crime scene, give the victim
16        instructions, and then they view the individual.
17   Q.   Did you direct -- you had two individuals?
18   A.   Yes.
19   Q.   Did you direct those individuals to be transported
20        back to 19 Roslyn Street?
21   A.   Yes.
22   Q.   Did you learn those individuals' names?
23   A.   Yes.
```

15

RE: A. MILLER                                           N. WENGERT

1  Q.  What were their names?
2  A.  First gentleman was Aaron Hinds, 31 Bradburn
3      Street. Second one was Anthony Miller of 607 Birr
4      Street.
5  Q.  Where did you have them transported from?
6  A.  Corner of Genesee and West High Terrace. The
7      officer stopped them at 22 Bradburn street.
8  Q.  Are you familiar with the area of 19 Roslyn Street
9      and 22 Bradburn Street?
10 A.  Yes.
11 Q.  Approximately how far a distance is it between
12     those two?
13 A.  About six to seven blocks.
14 Q.  You said the first individual Mr. Hinds, he was --
15     how did you find out his address?
16 A.  He told me.
17 Q.  You said that was 31 Bradburn Street?
18 A.  Correct.
19 Q.  Where is 31 Bradburn Street in relation to 22
20     Bradburn Street?
21 A.  Basically across the street.
22 Q.  Before you did the show-ups did you give Mr. Mosley
23     any instructions?

MCDA000773

RE: A. MILLER                                          N. WENGERT

1   A.   Yes.

2   Q.   What were the instructions?

3   A.   Sum and substance I told him the police stopped a

4        couple individuals who may or may not have been

5        involved in the incident and I asked him if he'd

6        look at them and tell me if he recognized them.

7   Q.   You said -- who was the first individual?

8   A.   Aaron Hinds.

9   Q.   The second individual?

10  A.   Anthony Miller.

11       MR. HARRIGAN:  No further questions.  Any

12           questions?

13       THE JURORS:  (No response)

14       MR. HARRIGAN:  Thank you.

17                    (WITNESS EXCUSED)

MCDA000774

RE: A. MILLER                                   LAW AND INSTRUCTIONS

1       MR. HARRIGAN: At this time I am going to ask you
2           to vote on the one charge of robbery first
3           degree.
4               I will read to you CPL 190.65.
5           And that says: "The grand jury may indict a
6           person for an offense when the evidence
7           before it is legally sufficient to establish
8           such person committed such offense and
9           competent and admissible evidence before it
10          provides reasonable cause to believe that
11          such person committed such offense."
12              I'm not leaving any exhibits for
13          you.
14              Are there any questions?
15      THE JURORS: (No response)
16      MR. HARRIGAN: All right. I will ask you to vote
17          the case.
18
19
20              (CASE CLOSED)
21
22
23