```
 1  STATE OF NEW YORK

 2  COUNTY OF MONROE          SUPREME COURT

 3  ----------------------------------------x

 4  THE PEOPLE OF THE STATE OF NEW YORK,    :   IND # 2013-0954

 5  -vs-                                    :

 6  ANTHONY MILLER,                         :   JURY TRIAL

 7                      Defendant.          :
    ----------------------------------------x
 8
                                    Hall of Justice
 9                                  Rochester, New York  14614
                                    September 9, 2014
10

11  B E F O R E:

12          HONORABLE THOMAS E. MORAN,

13                              Supreme Court Justice

14  A P P E A R A N C E S:

15          SANDRA DOORLEY, ESQ.
            District Attorney - County of Monroe
16          47 South Fitzhugh Street
            Rochester, New York 14614
17          Appearing for the People of the State of New York
            By:  MICHAEL HARRIGAN, ESQ.
18               Assistant District Attorney

19          TIMOTHY P. DONAHER, ESQ.
            Public Defender - County of Monroe
20          10 North Fitzhugh Street
            Rochester, New York   14614
21          Attorneys for the Defendant
            By:  JOSHUA STUBBE, ESQ.
22               Assistant Public Defender

23          ANTHONY MILLER
            Defendant
24
                                    CAROL P. RAES, C.S.R.
25                                  Senior Court Reporter
```

1      THE COURT: You are Anthony Miller?
2      THE DEFENDANT: Yes.
3      THE COURT: You appear here today with your
4  attorney, Mr. Stubbe, is that correct?
5      THE DEFENDANT: Yes.
6      THE COURT: Mr. Harrigan for the People.
7  We're here for the purposes of a jury trial; however,
8  before we begin, there are two things I want to deal
9  with. One is the sidebar waiver.
10     Mr. Miller, we talked briefly last week about
11  whether you wanted to come up to the bench on those
12  occasions when I call the lawyers to the bench or when we
13  have a bench conference. The reason for those is usually
14  scheduling; more importantly, to talk about pieces of
15  evidence which may or may not get admitted ultimately.
16     THE DEFENDANT: Right.
17     THE COURT: Obviously, the more people we have
18  up here, the louder we have to be, the greater the
19  likelihood the jury can hear all of those things. I'm
20  positive, because I know Mr. Stubbe pretty well, that the
21  minute he gets away from this bench and sits back down,
22  if you're there, he's going to tell you exactly what went
23  on. But you have an absolute right to come to the bench
24  if you want. You can waive coming up to the bench if you
25  want. It's totally up to you.

```
 1                THE DEFENDANT:  Okay.
 2                THE COURT:  In addition to that, even if you
 3   decide to sign the form that says you waive coming up, if
 4   you change your mind at any time, you're more than
 5   welcome to do so.
 6                THE DEFENDANT:  Okay.
 7                THE COURT:  Okay?
 8                THE DEFENDANT:  Yes.
 9                THE COURT:  Have you had a conversation with
10   Mr. Stubbe about coming up to sidebars?
11                THE DEFENDANT:  Yes, I have.
12                THE COURT:  Would you like to waive coming up
13   at this point?
14                THE DEFENDANT:  Yes, I am.
15                THE COURT:  If you would be so kind as to sign
16   the form.  Nobody pressured you to waive this right, did
17   they?
18                THE DEFENDANT:  No.
19                THE COURT:  You're doing it knowingly,
20   intelligently, and voluntarily after having an
21   opportunity to speak to Mr. Stubbe?
22                THE DEFENDANT:  Yes.
23                THE COURT:  Thank you, Mr. Miller.  If you
24   could mark that, we will mark that part of the court
25   exhibits.
```

```
 1              (COURT EXHIBIT 1 WAS MARKED FOR IDENTIFICATION.)
 2              THE COURT:  Now, Mr. Stubbe, I received a
 3    motion yesterday from you.  Would you like to articulate
 4    that on the record, please?
 5              MR. STUBBE:  Judge, I would.  I'd actually
 6    like to amplify based upon some information that I
 7    received from Mr. Harrigan just today.  I don't know when
 8    he sent the e-mail, to be fair to him.  I didn't get it
 9    until this morning.  I received a PDF that's an
10    Investigative Action Report from Officer Nolan Wengert,
11    which states, in sum and substance, that days after this
12    alleged robbery happened, he contacted the victim and the
13    victim -- or the victim contacted him, and the victim
14    gave him the serial number and his Apple ID so that he
15    could use the Find My iPhone, I believe, app to see if
16    the phone was still active, and they found that that
17    phone was still active two days after this robbery in an
18    area near Genesee and West High Terrace.
19              Now, at that time, Mr. Miller was verifiably
20    in the Monroe County Jail.  When Investigator Wengert
21    activated the phone--you can set it.  It makes the phone
22    ring or an alarm goes off--a group of approximately 30
23    people, he states, were there, and even though there were
24    uniformed officers in the area, the alarm went off, the
25    people dispersed.  He wasn't able to get any further
```

```
 1      information.  I feel like -- and I again just received
 2      this today even though it's, I think, pretty clearly
 3      Rosario, was a document created for Mr. Wengert.  He did
 4      testify at the Wade hearing that we had.  I believe it's
 5      also Brady information that I should have been provided
 6      with immediately.  I believe that I would be ineffective
 7      in not taking a look at the Apple records or the Find My
 8      iPhone records or having contact with the provider of the
 9      phone to see if we could use cell tower triangulation to
10      try to get a better idea where this phone was, at least
11      during the two days after my client was in jail that the
12      phone was being used.  I don't know if it was used
13      afterward, but my receipt of this in the last minute is
14      something I certainly would have put in my written motion
15      to address, my written motion, a little more fully.  The
16      reason I asked for --
17               THE COURT:  Let's be clear.  The motion you
18      submitted yesterday is a motion for adjournment of the
19      trial based upon different information than you just put
20      on the record.  If you would articulate that at this
21      juncture, I'd appreciate it.
22               MR. STUBBE:  Correct.  It was a motion
23      basically saying that about a week ago, Investigator --
24      Officer Daryl Pierson, RPD Officer Daryl Pierson, was
25      shot and killed, and that since that time, doing a quick
```

1  search on the Democrat & Chronicle, I found that there
2  are, I believe, 23 articles and counting about that.
3  There are too many to note, but hundreds, if not
4  thousands of comments on those articles.
5          The tenor of the community right now, I feel,
6  is so pro police and/or sympathetic to the police that a
7  defense where I'm functionally saying that the officers
8  didn't do a good job or possibly withheld evidence, I
9  believe, would go over like a lead balloon these days,
10 and I don't believe that Mr. Miller right now could get a
11 fair trial in this community.  I believe -- it's
12 obviously his constitutional right to have that, and that
13 this interceding event has destroyed his ability to do
14 that.
15         I believe what also tends -- or I would think
16 tends to have you decide toward an adjournment is that
17 the district attorney asked for an adjournment on this
18 case simply due to Investigator Wengert's unavailability,
19 for training purposes.  I don't know if we ever went over
20 whether his training was scheduled before or after this
21 trial date, but you set the trial date many, many months
22 before our original June trial date.  And based upon
23 that -- that's certainly a reason to adjourn the case,
24 but I don't believe it's nearly as compelling a reason as
25 a fair trial for a defendant.

```
 1              Based upon all of those factors, and I think
 2   possibly even moreso based upon this late turnover of
 3   this evidence -- and I'm not saying this is Mr. Harrigan.
 4   I'm fairly certain Mr. Harrigan will tell you he just
 5   received this from Investigator Wengert, but based upon
 6   all of those factors, I believe we are entitled to an
 7   adjournment.
 8              Finally, my client is out of custody, so it's
 9   not prolonging any sort of pretrial custody that might be
10   a consideration for the Court, and I don't believe I put
11   that in my papers.
12              THE COURT:  I think you did.  With respect to
13   the new information as it relates to the cell phone, did
14   I hear you correctly that you would be in a position to
15   want to subpoena the provider for the purposes of looking
16   at the records of the phone?
17              MR. STUBBE:  Correct.
18              THE COURT:  Do you have the records of the
19   phone?
20              MR. HARRIGAN:  I have the records of the phone
21   for phone call purposes.  I don't have any pings or --
22   there was no -- no warrant or no subpoena for any
23   triangulation or any of that.  I can provide -- I didn't
24   intend on -- in my mind, the phone records don't really
25   tell me anything.  The phone was turned off right after
```

1      and that --
2              THE COURT: So there's no phone calls after
3      the time of the alleged theft?
4              MR. HARRIGAN: Just, your Honor -- while I'm
5      looking for that, I can tell the Court that with regard
6      to that document, I met with Investigator Wengert at
7      approximately 4:30 yesterday, 4:30 p.m. After our
8      meeting, that's when I e-mailed it to Mr. Stubbe. That's
9      the first time I've seen that document or was aware of
10     that document. I told Investigator Wengert that. He
11     recalled providing that to me at grand jury. I was at
12     grand jury with Investigator Wengert. I've searched my
13     files. I've searched every piece of paper. I don't have
14     an independent recollection of that, and I don't have
15     that in my file.
16             THE COURT: Mr. Harrigan, just to be clear, I
17     will subscribe no ill intent on your part because I know
18     better. You are not of that vein. If you had it, I'm
19     sure you would have turned it over. However, the police
20     are your responsibility, and the failure to turn that
21     over is, I think, fairly problematic. Here's what I'm
22     thinking: If we don't have the records -- I'm trying to
23     figure out whether there would be records that even
24     existed that would give locations of the phone if it was
25     turned off, and I don't think so.

1           MR. STUBBE: Judge, I can -- having subpoenaed
2  and done a lot of work in this area, it would not.
3  However, it's clear that on September 27th, the phone was
4  on or else this Find My iPhone app, assuming that's what
5  he used, would not work, and the fact that it did work
6  indicates that the phone was, at least on on the 27th.
7  When a phone is on, it's being tracked at all times.
8  This is an Apple iPhone. They're being tracked at all
9  times. The provider doesn't routinely give out that
10 information, but they certainly will based upon a
11 judicial subpoena, so for any time it was on during those
12 days, I think it's very --
13          THE COURT: Are there any calls after the time
14 of the theft?
15          MR. HARRIGAN: Your Honor, I do have records.
16 I believe they're from the victim. I'm not able to
17 confirm that. I don't have all my paperwork here with
18 me, and there are calls, actually September 25,
19 September 26, September 27, and ends on September 27th.
20 The reason why I say I don't know if it's the victim's,
21 it's under a completely different name and a different
22 address.
23          THE COURT: But it's the right phone number.
24          MR. HARRIGAN: I believe it is. I believe it
25 is. I can't recall for certain without seeing -- It is,

```
 1    your Honor.  Mr. Stubbe just showed me the phone number.
 2              MR. STUBBE:  Judge, I obviously state that's
 3    Brady, also.
 4              THE COURT:  Mr. Harrigan, we're not having a
 5    trial.  Normally, I could give a short adjournment.  I
 6    know we're only going to pick a jury today and then
 7    tomorrow morning we're not going to be in session, but I
 8    don't -- if it was just the review of the records that
 9    you needed to see, we'd just do the adjournment.  What
10    you're going to do is backtrack on those phone numbers
11    and go find out who had the phone, right?
12              MR. STUBBE:  Correct.
13              THE COURT:  That can't get done between today
14    and tomrrow.
15              MR. STUBBE:  I'll have a subpoena to you by
16    the end of business today because I know these phone
17    companies won't do it based upon my signature.
18              THE COURT:  It sounds like Mr. Harrigan has in
19    his possession the phone records which would show
20    outgoing and incoming.  If that's the case, I would
21    assume you're going to be looking for who was called and
22    who called that phone.
23              MR. STUBBE:  Correct, and also, I will be
24    subpoenaing the -- if they have them -- either the GPS
25    record or the cell tower ping records.
```

```
 1             THE COURT:  Mr. Harrigan, can I see those real
 2   quick?
 3             MR. HARRIGAN:  You can, your Honor.  Let me
 4   make a -- I made a notation to myself.  I've talked to
 5   the victim.  He transferred his number to actually
 6   another phone, so I'm not sure this is the actual --
 7   because obviously, it doesn't mean just because you have
 8   a number, you can transfer it to another phone.  I made
 9   that note, so I'm not even confident this is from that
10   phone because I know I made that note for a reason.
11             THE COURT:  He changed his number?
12             MR. HARRIGAN:  No, he told me he transferred
13   his number to another phone, so he had the same number
14   but he used another phone, so those records are for that
15   number, not that phone.
16             THE COURT:  Do we know when he changed it?
17             MR. HARRIGAN:  I'm not sure of that, your
18   Honor.  I know it was --
19             THE COURT:  Can you call him?
20             MR. HARRIGAN:  I can call him, yes.
21             THE COURT:  Let's find out.  If he changed --
22   if he assigned a different phone to that number within 20
23   minutes of the theft, it's a whole different story.
24             MR. STUBBE:  Maybe, Judge, but those records
25   go through the 27th.  I don't know when they stop and if
```

```
 1            the 27th is actually the day they stop altogether.
 2                      THE COURT:  To get the Find The iPhone, don't
 3            you have to dial the number?
 4                      MR. STUBBE:  No, you have to have the --
 5                      THE COURT:  Serial number?
 6                      MR. STUBBE:  I believe the serial number.  You
 7            have to have the Apple ID and a password is all I believe
 8            you need.  I think once you plug those in, then it uses
 9            the Apple ID to identify all devices that are synced, for
10            lack of a better word, to that account.
11                      THE COURT:  Okay.
12                      MR. HARRIGAN:  I can just tell the Court that
13            this subpoena I requested from September 25, 2013 to
14            present, it was faxed on September 27th, so that's what
15            the records are for.  So anything after that, I don't
16            have.  I wouldn't know.
17                      MR. STUBBE:  Judge, simply the records would
18            be -- all I'm looking for, even if he did transfer the
19            phone records -- or the phone number, certainly would be
20            a reasonable thing to do.  That doesn't mean that they
21            still wouldn't be able to track the phone through a GPS
22            or cell tower triangulation.  Additionally, I don't know
23            how it would exactly work that if he transferred the
24            number to another phone, how the Find My iPhone --
25            doesn't actually say "Find My iPhone" on the paperwork.
```

1  I know it is a common investigative tool that the police
2  officers use.  I don't know how that also wouldn't be
3  transferred to a different phone as opposed to staying on
4  the old one, but these are, obviously, things I would
5  have looked into had I had that paperwork.

6  MR. HARRIGAN:  I can tell the Court I have
7  inquired throughout this case from Investigator Wengert
8  why there wasn't any pinging on the phone or some type of
9  investigative technique such as that.  His answer to me
10 was the phone was turned off, but then I did receive that
11 yesterday, so the entire time, I had -- my impression was
12 the phone was off, nothing came back, so there was no use
13 to try to get the pinging records.  Then I received that
14 yesterday.

15 THE COURT:  Can you call Wengert?
16 MR. HARRIGAN:  I can.
17 THE COURT:  Can you just call him for me?
18 MR. HARRIGAN:  Yes.
19 THE COURT:  Call him.  See where he is.
20 MR. HARRIGAN:  Okay.
21 THE COURT:  If he's close, let's have a visit.
22 MR. HARRIGAN:  My guess is he's not close.
23 THE COURT:  Here's what I need to know:  I
24 need to know when the alleged victim transferred the
25 number to another phone because Wengert keeps saying that

```
 1         the phone was turned off, and I don't know if he means it
 2         was switched to another device, the number was switched
 3         to another device.  We're still left with the ultimate
 4         issue of whether --
 5                   MR. STUBBE:  Judge --
 6                   THE COURT:  But you ping a number.
 7                   MR. STUBBE:  No, you ping an ID.  You ping a
 8         serial number, I guess, not a phone number.
 9                   THE COURT:  If you don't have a provider, if
10         he takes the phone and -- all you have left is a handheld
11         laptop in essence, right?
12                   MR. STUBBE:  With a GPS locater.  They also
13         still have cell service because every phone ever made can
14         dial 911.  I believe that even in an inactive or
15         unactivated phone, you can still use it on WiFi.  That
16         would still be transmitting the serial number.  I think
17         it's an ESIN number.
18                   THE COURT:  Mr. Harrigan, here's the problem.
19                   MR. HARRIGAN:  Yes, your Honor.
20                   THE COURT:  I don't think we know enough.  I
21         can't make a decision of this magnitude without having
22         actual knowledge of exactly what's going on, and if I
23         knew more about how the phone systems worked or any of
24         that, I'd be in a different position, but I think I have
25         to give Mr. Stubbe and Mr. Miller the opportunity to do
```

1  some digging.

2  MR. HARRIGAN: I apologize to the Court and
3  counsel.

4  THE COURT: Mr. Harrigan, forgive me for this.
5  Two things: Number one, I'm not blaming you because
6  you're a stand-up, honest, forthright guy. I don't have
7  any doubt about that. Number two, as a matter of policy,
8  these things crop up way too many times. You know, I was
9  in your position for many, many years, and I know stuff
10 happens, but you know what I used to say? If you wrote
11 it down, even a plate number, stick it in the xerox
12 machine, make a copy of it and send it to us. We're just
13 a little lax on Rosario, and in this case, he has an
14 argument that it's Brady. It's a little stretch, but
15 Rosario, clearly.

16 MR. HARRIGAN: And, your Honor, it's not -- I
17 offer something not as trying to put blame on someone
18 else or excuse the conduct, but usually, that is what I
19 do before a hearing. Unfortunately, I did not conduct
20 the hearing in this case, so it was --

21 THE COURT: Again, I think Mr. Stubbe would
22 agree with me --

23 MR. STUBBE: I do.

24 THE COURT: -- that you're not one of the guys
25 we worry about.

1        MR. HARRIGAN:  Thank you.

2        THE COURT:  But I can't have the trial, and

3   you gotta get me a subpoena because a short adjournment

4   won't resolve the issues that are outstanding.  Let's see

5   what I can do here.  This is going to be awhile.  What

6   are the chances you guys are free on the 14th of October?

7        MR. HARRIGAN:  I am free.

8        MR. STUBBE:  I am, too, Judge.

9        THE COURT:  Wow.

10       MR. STUBBE:  How did we not talk about that

11  date yesterday?  That was for a brand new case.

12       THE COURT:  I'm going to put you in as number

13  two -- actually, number three.  The first two -- I'm

14  pretty sure the first two are going to settle after what

15  I learned yesterday, so if we can put this down for

16  October 14th, that should give you enough time to get

17  your subpoenaed materials back and review those.

18       THE CLERK:  So that is at 2 o'clock?

19       THE COURT:  10/14.

20       THE CLERK:  The holiday is on the 13th.

21  Fourteenth.

22       THE COURT:  What would I do without you?  It

23  will be 2 o'clock.  Didn't have to chime in quite so

24  quickly.  So Mr. Curran, if you'd tell the Commissioner

25  we can't do anything today.

1  THE CLERK: I shall.

2  THE COURT: Mr. Miller, Mr. Stubbe, Mr. Harrigan, we are set now for October 14th at 2 o'clock in the afternoon for trial.

   Mr. Miller, I've told you this before, but I'm going to repeat it, simply because I have to. You have a duty and obligation to be here each and every time I direct. If you fail to show up, matters are going to take place in your absence. Right now, you are scheduled for a new trial date of October 14 at 2 o'clock in the afternoon. If you fail to show up on that day, trial will go on in your absence. Do you understand?

13  THE DEFENDANT: Yes.

14  THE COURT: All right. Thank you.

15  THE DEFENDANT: Thank you.

16  (Proceedings concluded.)

CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT

*[Signature: Carol Raes]*

CAROL P. RAES, C.S.R., Senior Court Reporter