UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY MILLER,

                                                       Plaintiff,

-against-

THE CITY OF ROCHESTER, MARYROSE M. WENGERT AND EARL G. WENGERT, AS CO-EXECUTORS OF THE ESTATE OF NOLAN WENGERT (deceased), DARYL HOGG, JAYSON PRINZI, DANIEL WATSON, and "JOHN DOE" RPD OFFICERS 1-10,

                                                       Defendants.

**22-cv-6069 (FPG)(MJP)**


## SUR REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Elliot Dolby Shields
Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this sur-reply to address new arguments raised for the first time in Defendants' Reply Memorandum of Law (ECF No. 65) at Point VI, which seeks to strike as "irrelevant, unsupported and scandalous" Plaintiff's references to Investigator Wengert's documented opioid addiction and overdose death.

## ARGUMENT

1. **Newly Obtained Police Report Confirms Overdose**

Plaintiff has recently acquired the official police report relating to Investigator Wengert's death; a copy is submitted herewith as Exhibit 1. Contrary to Defendants' repeated assertions that "there is no evidence whatsoever" of an overdose, this public record unequivocally states that Wengert died of a drug overdose in 2017 and had previously experienced another near-fatal opioid overdose in 2016. The report describes empty Suboxone packages, drug paraphernalia, and other indicia of a longstanding opioid addiction. This newly obtained documentary evidence is admissible as a public record (Fed. R. Evid. 803(8)), for impeachment purposes (Fed. R. Evid. 801(d)(2)), and potentially as a business record (Fed. R. Evid. 803(6)). Thus, there is now robust, independent proof that Investigator Wengert's death was caused by opioid abuse.

2. **Relevance to Credibility and Probable Cause Analysis**

Defendants argue that the manner of Wengert's death in 2017 is "irrelevant" to events in 2013. However, this argument is incorrect and fails to address critical facts in Plaintiff's opposition papers.

**Anthony Miller's Observations.** Mr. Miller testified that, on the night of his wrongful arrest, during the interrogation at the Public Safety Building, Wengert appeared to be under the influence of drugs or otherwise impaired. (See ECF 64-1, Plaintiff's Rule 56.1 Counterstatement ¶ 92). This observation is now corroborated by the police report's confirmation of Wengert's

1

opioid addiction and a prior overdose in 2016. Opioid addiction does not materialize overnight; its effects on cognitive function and judgment can span years.

**Investigation and Exculpatory Evidence.** Wengert's possible impairment is directly relevant to his failure to investigate properly and to his withholding of critical exculpatory evidence—namely, that another individual was found in possession of the stolen iPhone—and Wengert's suppression of his report documenting this information for approximately one year. (See ECF 64-1, Plaintiff's Rule 56.1 Counterstatement ¶¶ 93-95). Courts recognize that an officer's capacity or mental state can bear on his credibility, thoroughness, and reliability in conducting investigations. See *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992) (evidence bearing on a witness's capacity to perceive or recall may be admissible).

**Probative Value Outweighs Prejudice.** Under Fed. R. Evid. 403, evidence may be excluded only if its probative value is "substantially outweighed" by unfair prejudice or potential to confuse the jury. Here, the fact that Wengert had a severe, ongoing opioid addiction has significant probative value in assessing the credibility of his conclusions about probable cause. It also explains why he might have disregarded exculpatory evidence. Any potential prejudice does not "substantially outweigh" this important probative value, particularly where the jury is entitled to consider the investigating officer's ability or inclination to perform his duties competently and honestly.

3. **Admissibility of the Police Report and Related Evidence**

Defendants contend this information should be stricken as hearsay or as barred by the "Dead Man's Statute." Neither argument holds:

**Public Record Exception (Fed. R. Evid. 803(8)).** Police reports, which set forth "factual findings from a legally authorized investigation," are admissible in civil cases. *See Beech Aircraft*

2

*Corp. v. Rainey*, 488 U.S. 153, 169 (1988). This official police report documents the circumstances of Wengert's overdose death and is thus properly within Rule 803(8).

**Business Record Exception (Fed. R. Evid. 803(6)).** Alternatively, police reports—compiled in the regular course of law enforcement activity—may qualify as business records. The presence of officer observations and official documentation about Wengert's overdose squarely fall under that exception.

**Not Barred by Dead Man's Statute.** Federal courts have consistently held that state "Dead Man's Statutes" do not apply to federal law claims in federal court. *See* Fed. R. Evid. 601 ("Every person is competent to be a witness unless these rules provide otherwise."). Here, Mr. Miller's federal claims are not subject to the New York Dead Man's Statute. Further, Mr. Miller's testimony stems from his *firsthand observations* of Wengert at the time of the arrest; the newly obtained police report provides objective, non-hearsay confirmation that Wengert was battling addiction.

**No Collateral Estoppel or Prior Judicial Determination.** Defendants suggest that Judge Odorisi's ruling in a Court of Claims proceeding precludes admission of this evidence. However, that ruling concerned testimony—without the benefit of the corroborating police report now before this Court—and was limited to the specific evidentiary posture of that state-level proceeding. It has no preclusive effect here, especially in light of newly obtained documentary evidence.

Moreover, while one statement in the Court of Claims was objected to, and that objection was sustained, Mr. Miller was permitted to testify regarding his observations of Wengert's actions on the night of the incident, which indicated that Wengert was under the influence of drugs. (ECF 64-3, Excertps from Court of Claims Trial, at p 176:2-177:19). This is particularly true, since Wengert had arrested and interrogated Mr. Miller three years earlier in 2010, and Mr. Miller

3

testified that he was acting differently on the night of the incident than he was when he previously interacted with him in 2010.

### 4. Defendants' Arguments Under Federal Rules of Evidence 401 and 403

Defendants rely on Fed. R. Evid. 401 and 403 to argue that Wengert's drug addiction is irrelevant and unduly prejudicial. These arguments fail.

**Direct Bearing on Credibility and Reliability.** Under Rule 401, evidence is relevant if it tends "to make a fact more or less probable." Whether Wengert was impaired when he ignored exculpatory evidence is relevant to whether probable cause existed. *See Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) (improper investigative actions can vitiate probable cause).

**Probative vs. Prejudicial.** Rule 403 only excludes evidence if its probative value is "substantially outweighed" by dangers like unfair prejudice or confusion. It is not "unfairly prejudicial" to show that the investigator's addiction possibly clouded his judgment in a manner that directly affected Plaintiff. Rather, it is "unfairly prejudicial" to foreclose this crucial evidence from the fact-finder, especially where Defendants seek to rely on Wengert's conclusions and investigative steps to justify probable cause.

**Not "Character" Evidence Under Rule 404.** Defendants also cite Fed. R. Evid. 404 to label this as impermissible "character" evidence. This ignores the important distinction between evidence of a character trait offered solely to show conformity and evidence offered to establish capacity, knowledge, or motive. See Fed. R. Evid. 404(b)(2). Here, the fact that Wengert was addicted to opioids—and had nearly died from another overdose in 2016, the year before his death—is probative of his potential impairment and motive or intent to cut investigative corners.

## Conclusion

In light of the newly produced police report confirming Investigator Wengert's opioid addiction and overdose death, Plaintiff respectfully requests an opportunity to address these issues fully in a sur-reply. This evidence directly contradicts Defendants' assertion that "no evidence whatsoever" supports Plaintiff's position, and it undermines their claim that such evidence is categorically inadmissible and irrelevant.

Where, as here, significant new evidence has come to light that directly bears on the claims at issue, a short sur-reply will help the Court assess the evidence's relevance and admissibility. Accordingly, Plaintiff respectfully requests leave to file a sur-reply to address these new arguments and factual assertions raised in Defendants' Reply Memorandum concerning Point VI.

Dated: February 10, 2025                           Roth & Roth, LLP
       New York, New York

                                                          ~//s//~
                                          Elliot Dolby Shields